**In the Matter of the ESTATE OF Jack Parker CHILTON, Deceased.**

**No. 18488.**

Supreme Court of South Dakota.

Argued April 26, 1994.

Decided Aug. 24, 1994.

Lloyd C. Richardson of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for appellants, England, Head, Hardin, Jarrett, Ayres, Heatherly and Ellis.

Richard L. Kolker of Kolker, Fritz, Hogan & Johnson, Groton, for appellee Norwest Bank, Adm'r.

Kennith L. Gosch of Bantz, Gosch, Cremer, Peterson and Oliver, Aberdeen, for appellee, Ellsbury.

Raymond M. Schutz of Siegel, Barnett & Schutz, Aberdeen, for appellees, Coles and Doane.

SABERS, Justice.

The half-blood heirs appeal, claiming the trial court erred in holding that the Estate consists only of "ancestral property" to which the whole-blood heirs are entitled to the exclusion of the half-blood heirs. We reverse in part and remand.

## FACTS

Jack Parker Chilton (Decedent) died intestate. He left surviving him one aunt as his closest living relative. She disclaimed any interest in the "ancestral property" and is presumed to have predeceased him.

Ronald Ellsbury (Ellsbury), Blanche E. Chilton Coles and Audrey M. Chilton Doane are whole-blood cousins in the fourth degree to the Decedent. They will be referred to as the whole-blood cousins.

Audrey Alexander England, Noralyn Adams Head, Robert Chilton Hardin, Mary Ann Davis Jarrett, Jerry L. Ayres, Paula Kay Heatherly, and Carl Sanford Ellis, Jr.,

are also cousins of the fourth degree. This group of cousins descends from the same grandfather as the Decedent but from a different grandmother, thus are cousins of the half blood. They will be referred to as the half-blood cousins. An ancestral chart is attached for the reader's convenience.[1]

Procedurally, on March 10, 1993, a Stipulation and Agreement was entered into by all of the parties interested in the Estate. A Petition for Distribution Pursuant to Stipulation and Agreement was filed requesting approval of the Stipulation and Agreement and an Order authorizing and directing the Executor to distribute the residue of the estate pursuant to the Stipulation and Agreement. None of the individual Appellants signed the Stipulation and Agreement. On May 21, 1993, a Notice of Appearance was made by Lloyd C. Richardson, Jr., on behalf of the half-blood cousins. A Hearing was held on June 22, 1993. The circuit court issued an Order Determining Heirship and Approving Distribution on July 26, 1993 approving the terms and conditions of the Stipulation and Agreement and denying the claims of inheritance of the half-blood heirs. The half-blood cousins appeal.

**Whether all of the inheritance came to the Decedent by descent, devise, or gift from ancestors of the whole-blood cousins under SDCL 29–1–13?**

This case involves the interpretation of SDCL 29–1–13. "The proper construction to be given a statute is a question of law which is fully reviewable. Accordingly, the questions presented are reviewed de novo." *Dahl v. Sittner*, 474 N.W.2d 897, 899 (S.D.1991) (citing *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240, 242 (S.D.1989); *Border States Paving v. Department of Revenue*, 437 N.W.2d 872, 874 (S.D.1989)).

The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.

Words and phrases in a statute must be given their plain meaning and effect. When the language of a statute is clear, certain and unambiguous, there is not reason for construction, and the [c]ourt's only function is to declare the meaning of the statute as clearly expressed.

*U.S. West Communications, Inc. v. Public Utilities Commission*, 505 N.W.2d 115, 123 (S.D.1993) (citation omitted).

SDCL 29–1–13 provides:

Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance c[a]me to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance.

We find the language of SDCL 29–1–13 clear, certain, and unambiguous. Therefore, our only function is to declare the meaning as clearly expressed. *U.S. West*, 505 N.W.2d at 123.

Under SDCL 29–1–13, the half-blood cousins inherit equally with the whole-blood cousins because they are all kindred of the 4th degree, *"unless the inheritance c[a]me to the intestate by descent, devise, or gift of some one of his ancestors,* in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

---

1. Additional facts are as follows:

Jack Parker Chilton died intestate on January 25, 1991. He was predeceased by his father, Sandy Chilton, and his mother, Norma (Rapp) Chilton. Norma was survived by one sister, Hazel (Rapp) Ellsbury. Hazel has one surviving son, Ronald A. Ellsbury. Hazel and Norma are the daughters of Frank and Victoria Rapp.

Sandy was the son of Walter and Sarah Chilton. Sarah was Walter's first wife. Sandy had three brothers of the full blood, William, Luther, and Evans. William has one living daughter,

Blanche Coles. Luther has one living daughter, Audrey Doane. Evans has no living children.

After the death of his first wife Sarah, Walter married Nora L. Whiting. Walter and Nora had three children, Elsie, Violet, and Mary, all of whom are deceased. Elsie has one living child, Audrey England. Violet has one living child, Noralyn Head. Mary has five living children, Robert Hardin, Mary Ann Jarrett, Jerry Ayres, Paula Heatherly, and Carl Ellis, Jr. These are the half-blood cousins referred to above.

SDCL 29–1–13 (emphasis added). The half-blood cousins argue that the exception found in SDCL 29–1–13 is not applicable because the Decedent's estate does not contain property he received from his grandmother, Sarah Fulcher. According to the half-blood cousins, "[p]roperty Jack received from anyone else on the Chilton side would be divided equally among all the cousins because everyone but Sarah on the Chilton side is of the blood of every other cousin who may have been an ancestor." The half-blood cousins further argue that "[i]f Jack's estate contained property received from his mother's side [Rapp], then 29–1–13 would not be applicable since it deals only with inheritance rights among whole and half bloods."

Although we do not accept this last statement, we do agree with *In re Estate of Kirkendahl,* 43 Wisc. 167 (Wis.1877), a case cited by the half-blood cousins, which states:

> The statute is elliptical, and the words "all those" mean "all those kindred of the half blood." The word "persons" cannot be supplied after the words "all those," because that word is not the subject of the main proposition; and because supplying that word would blot out the exception. *The rule of the statute then is, that the kindred of the half blood shall, in general, inherit equally with kindred of the whole blood; but that, as to ancestral estate, half bloods not of the blood of the ancestor from whom the estate came, shall not inherit, while whole-blood kindred of the intestate may inherit, though not of the blood of the ancestor.*

43 Wisc. at 171 (emphasis added). *See generally In re Ryan's Estate,* 21 Cal.2d 498, 133 P.2d 626, 630 (1943) ("That section commences: 'Kindred of the half blood inherit equally with those of the whole blood.' If the section had stopped there, kindred of the half blood would have been in exactly the same position as those of the whole blood, but the section continues with the 'unless' clause. The court held that such clause made an exception to the rule that kindred of the half blood inherit equally with those of the whole,

and as an exception to that rule it applied only to kindred of the half blood, who were excluded if not of the blood of the ancestor from whom the property came to the decedent."). Therefore, the half-blood cousins shall not inherit any ancestral property in the Decedent's estate which the Decedent received from the Rapp side of the family because the half-blood cousins are "not of the blood of the ancestor [Rapps] from whom the estate came." *Kirkendall,* 43 Wisc. at 171.[2]

The half-blood cousins argue that under SDCL 29–1–13, the burden of establishing the exception to the rule that kindred of the half blood inherit equally with those of the whole blood should be on those claiming the benefit of the exception, in this case the whole-blood cousins.

■ "Exceptions as a general rule should be strictly, but reasonably, construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception. [O]ne claiming an exception has the burden to show he comes fairly within the exception." *Schnabel v. Alcester School Dist. No. 61–1,* 295 N.W.2d 340, 342 (S.D.1980) (citing *Lien v. Rowe,* 77 S.D. 422, 426, 92 N.W.2d 922, 924 (1958); *State v. Ricke,* 160 N.W.2d 499, 500 (Iowa 1968)). Therefore, the whole-blood cousins, as the party claiming the exception, had the burden of demonstrating that the inheritance came to the Decedent by descent, devise, or gift of some one of his ancestors not of the blood of the half-blood cousins.

■ Findings of fact are reviewed under the clearly erroneous standard. "In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed." *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455, 459 (1970). The trial court found in its Mem-

---

**2.** This court interpreted SDCL 29–1–13 in *In re Estate of Edwards,* 273 N.W.2d 118 (S.D.1978), as providing "in the case of 'ancestral property,' whole-blood heirs inherit to the exclusion of half-blood heirs." *Id.* at 120.

orandum Opinion that the "affidavit of Ronald Ellsbury established that nearly all or even all of the decedent's assets" fell within the category of ancestral property, defined by the circuit court as property which did not come from the half-blood cousin's side. Thus, the trial court concluded the property did not follow the half-blood cousin's blood line.

█ The half-blood cousins failed to propose findings of fact and conclusions of law and failed to object to the proposed findings of fact and conclusions of law contained in the Memorandum Opinion.[3] *See* SDCL 15-6-52(a). "The failure of an appellant to object to findings of fact and conclusions of law and to propose his or her own findings, limits review to the question of whether the findings support the conclusions of law and judgment." *Huth v. Hoffman*, 464 N.W.2d 637 (S.D.1991) (citing *GMS, Inc. v. Deadwood Social Club*, 333 N.W.2d 442, 443 (S.D.1983); *In re Application of Veith*, 261 N.W.2d 424, 425 (S.D.1978)). Consequently, the issue is confined to whether the trial court's conclusions of law and its Order Determining Heirship and Approving Distribution are supported by the findings of fact.

Decedent's $1,130,496.27 estate consists of both real and personal property including Series E Bonds valued at $71,569.20, Series H Bonds valued at $36,500.00, a bank account in the amount of $645,860.40, real estate valued at $342,566.67, and miscellaneous assets valued at $34,000.00. The half-blood cousins argue that it is "not merely difficult but impossible" to trace the ancestral source of such funds and claim the whole-blood cousins failed to sustain their burden of proof.

While it appears that Decedent invested in C.D.'s and savings accounts "in some 13 different South Dakota, Minnesota and Kansas companies, and purchased 99 bonds between 1956 and 1988, with the bulk of the purchases occurring after 1970 when none of his maternal aunts and uncles were alive," the parties do not appear to dispute the fact that the assets from the Chilton side of the family were valued at $5,600 at the time of Sandy Chilton's (Decedent's father) death in 1940.

█ The circuit court took judicial notice of the probates of Decedent's relatives which passed property to him and, as noted above, found that "nearly all or even all of the decedent's assets" fell within the category of ancestral property which did not come from the half-blood cousin's side. The trial court relied upon Ellsbury's affidavit, which states:

3. All the property that was sold at auction in Jack Chilton's estate after his death was inherited either from affiant's grandfather, Frank Rapp, affiant's uncle, Earl Rapp, or from affiant's aunt and uncle, Charlotte and Dr. E. J. Frost. The only property that did not come from affiant's family was the farm land in Day County and possibly the Groton Independent newspaper.

4. The money which Jack Chilton invested was given to him by affiant's great uncle George Rapp. Jack Chilton's mother also inherited money from the Frost estate. Decedent also recounts that he began investing as a teenager using money given to him by his bachelor uncle, now deceased, "a brother to my grandfather."

The trial court also relied upon the Inheritance Tax Report and Inventory In the Matter of the Estate of Sandy M. Chilton. It showed that, at the time of his death, Sandy Chilton owned:

1. An undivided one-half interest in the Groton Independent, a weekly newspaper and printing plant at Groton, South Dakota valued at $3000.00;

2. An undivided one-half interest in Lots 7, 8, 9 and 10, of Block 23, First Addition to Groton, Brown County, South Dakota, held in Joint Tenancy with surviving wife valued at $1000.00, and

3. The Southwest Quarter of Section 19, Township 123, Range 59, in Day County, South Dakota, which land decedent con-

---

3. The trial court did not enter separate findings of fact and conclusions of law, but indicated by Order that the Memorandum Opinion "attached hereto and incorporated herein by reference shall constitute the Court's Findings of Fact and Conclusions of Law[.]"

veyed to Norma M. Chilton prior to his death valued at $1600.00.[4]

This same "Southeast Quarter of Section 19, Township 123, Range 59 Day County, SD" is included in the Inventory In the Matter of the Estate of Jack Parker Chilton and was valued at $57,000.00. The property was subsequently sold by Norwest Bank as the Administrator of the Estate for $69,600.00 according to the Order Confirming Sale of Real Property at Public Auction.[5] Yet, the trial court concluded that "nearly all" or "all" of Decedent's assets were ancestral property which did not come from the half-blood cousin's side. This conclusion is inconsistent with the findings. The record shows that the above real estate and the interest in the Groton Newspaper are traceable to the Estate of Sandy Chilton. Therefore, the conclusion that "all" of Decedent's assets were whole-blood ancestral property is not supported by the findings. We reverse in part and remand to the trial court to redistribute this property equally among the half-blood and whole-blood cousins because the half-blood cousins are "of the blood of the ancestor [Sandy Chilton] from whom the property came to the decedent."

Other than the property of Decedent traceable to the estate of his father, Sandy Chilton, the assets of the Jack Parker Chilton Estate consist of inheritance traceable to his mother's (Norma Rapp) side of the family. To this extent, the trial court's conclusions are supported by its findings. We reverse in part and remand.

MILLER, C.J., and WUEST, HENDERSON and AMUNDSON, JJ., concur.

---

4. The record also includes an affidavit signed by Decedent, dated November 12, 1990, which states that "[a]fter payment of father's last illness and funeral expense there remained our home, ¼ section of land in Day County, ½ interest in the Groton Independent, and $50.00 in cash."

5. The record does not show the value of property items "1." and "2." as of the date of Decedent's death.

EXHIBIT A

Frank Raap and Victoria McKiver (both deceased)

Walter Chilton
B - 1854
D - 1914

Sarah A. Fulcher
B - 1859
D - 1900

4 children

Nora L. Whiting
B - 1875
D - 1930

3 children

| | | | | | (2 children) |
|---|---|---|---|---|---|
| William Bell Chilton B - 1879 D - 1963 | Luther F. Chilton B - 1892 D - 1957 | Evans C. Chilton B - 1895 D - 1965 | Sandy Horace Chilton B - 1891 D - 1940 | Norma Raap (Deceased) | Hazel Raap (Living, Disclaimed) |
| | Audrey M. Chilton Doane B - 1928 | Alice Chilton Phillips D - 1989 | (father) | (mother) | Rosalie Ellsbury (Living) |
| Blanche E. Chilton Coles B - 1900 | | | Jack Parker Chilton B - 1933 D - 1991 No spouse, no children | | |
| Anna Mae Chilton Melvin B - 1902 D - 1988 | | Mark E. Phillips | | | |
| Thomas L. Melvin, Jr. B - 1926 | | David C. Phillips | | | |

Blair Chilton Alexander B - 1902 D - 1972

Violet Chilton Adams B - 1908 D - 1976

Robert Chilton Bacon B - 1930

Mary E. Chilton B - 1911

Nora Jo Adams B - 1938

Audrey Alexander England B - 1934

Jerry L. Avenue B - 1933

Paula Kay Beatherly B - 1946

Carl Sanford B - 1948

William C. Bacon B - 1928 D - 1972