1997 SD 49

**In the Matter of the ESTATE OF Lawrence J. TALLMAN, also known as L.J. Tallman, Deceased.**

**No. 19702.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 1997.

Decided April 30, 1997.

SABERS, Justice.

[¶ 1.] Former administrator of Estate appeals judgment requiring him to remit to Estate 1) $17,436.90 for amount he transferred from Estate and allegedly did not repay; 2) $6,889.83 for interest unnecessarily owed to State of South Dakota by Estate because he failed to timely pay inheritance tax; and 3) $5,000.00 for amount he paid himself in administrator's fees. We affirm issues 2 and 3 but reverse issue 1. Administrator's motion for appellate attorney's fees is denied.

### FACTS

[¶ 2.] This matter involves the probate of the Estate of Lawrence J. Tallman, who died June 26, 1980. Douglas Tallman (Douglas) was appointed administrator August 19, 1980 and acted in that capacity until an Order Revoking Letters of Administration was filed December 5, 1990 *nunc pro tunc* to August 9, 1988.

[¶ 3.] Douglas filed an accounting of the Estate on December 4, 1987, covering the period from August 20, 1980 through August 1987. Irma Mundhenke (Mundhenke), an heir to the Estate, objected to the accounting on the basis that Douglas:

1. Failed to make an annual accounting;

2. trafficked in Estate funds by transferring $95,000.00 to the Douglas Tallman Trust (Trust);

3. repaid the Estate only $77,563.10 from the Trust, leaving a balance due the Estate in the amount of $17,436.90;

4. untimely paid the State of South Dakota inheritance tax, resulting in an unnecessary debt of interest owed by the Estate in the amount of $6,889.83;

5. paid himself $5,000.00 in administrator's fees.

A hearing was held June 22, 1988. The trial court issued a memorandum decision July 11, 1988 and entered Findings of Fact and Conclusions of Law on August 9, 1988; both documents essentially agreed with Mundhenke's objections and ordered Douglas to remit to the Estate $17,436.90 as repayment for funds transferred to the Trust, $6,889.83 for the interest due the State of South Dakota, and $5,000.00 in administrator's fees disallowed by the court.

[¶ 4.] Douglas did not file proposed Findings of Fact and Conclusions of Law, nor did he object to those entered or those proposed by Mundhenke or the Estate. He did not request a new hearing. He did, however, send to the trial court several documents which he claimed would corroborate his testimony at the hearing; these documents were received by the court on September 12, 1988 (two months after the memorandum decision was entered, and one month after the Findings of Fact and Conclusions of Law were entered). Included with those documents are photocopies of what appears to be a duplicate check register, one dated June 17, 1983, showing a check paid from the Trust to the Estate in the amount of $20,000.00, and another dated January 3, 1984, showing a similar check in the amount of $700.96. The trial court forwarded the letter and the documents to the circuit court clerk, with instructions to file them and send copies to the attorneys of record. The documents are included in the record. A photocopy of the 1983 canceled check is included in Douglas' brief.

[¶ 5.] Douglas claims the trial court overlooked these entries in the accounting and erred in ordering him to pay the Estate $17,436.90. In other words, he claims he paid the $95,000.00, plus interest, to the Estate before he submitted the accounting.

[¶ 6.] For some inexplicable reason, judgment was not entered until January 18, 1996 and not filed until May 2, 1996, the same date notice of entry of judgment was filed. This appeal followed.

## STANDARD OF REVIEW

[¶ 7.] "The failure of an appellant to object to findings of fact and conclusions of law and to propose his or her own findings, limits review to the question of whether the findings support the conclusions of law and judgment." *In re Estate of Chilton,* 520 N.W.2d 910, 914 (S.D.1994) (citing *Huth v. Hoffman,* 464 N.W.2d 637, 638 (S.D.1991); *GMS, Inc. v. Deadwood Social Club,* 333 N.W.2d 442, 443 (S.D.1983); *In re Application of Veith,* 261 N.W.2d 424, 425 (S.D. 1978)). Therefore, our review of the issues is confined to whether the trial court's conclusions of law and judgment ordering Douglas to reimburse the Estate are supported by the findings of fact. *Id.*

[¶ 8.] 1. **WHETHER THE FINDINGS OF FACT SUPPORT THE TRIAL COURT'S CONCLUSION THAT DOUGLAS STILL OWED THE ESTATE $17,436.90.**

[¶ 9.] As a general rule, we may not consider the documents sent to the trial court *after* the trial court entered its judgment, since it did not consider them in reaching its decision. "Prior to claiming error on appeal, the trial court should have the opportunity to rule on the matter." *State v. Vandergrift,* 535 N.W.2d 428, 431 (S.D.1995) (quoting *State v. Jones,* 521 N.W.2d 662, 670 (S.D.1994)); *see also State v. Boutchee,* 406 N.W.2d 708, 710 (S.D.1987) ("The appellant must affirmatively establish a record that shows error and that the trial court was given an opportunity to correct it.").

[¶ 10.] In Douglas' accounting of the Estate, there are records of receipts and disbursements for each year. The trial court found that Douglas transferred $55,000.00 and $40,000.00 from the Estate to the Trust, as evidenced by the accounting. Both of these transfers occurred in 1983. The court credited Douglas $77,563.10 for returns to the Estate by looking to the "receipts" section of the 1983 accounting. However, there is another entry in the 1984 "receipts" section (January 3) with a nearly identical notation, attributing a $700.96 deposit to the Trust. The trial court must have inadvertently overlooked this entry, as there is no reason to exclude it while including the others. Therefore, we agree with Douglas that the trial court erred in not crediting him with the January 1984 payment, and this portion of the judgment is reversed to credit Douglas with the $700.96 payment.

[¶ 11.] The receipts for 1983 include an entry for $20,000.00 received from "E.H. Tallman Farms" on June 17, 1983. Handwritten next to this entry is the undated notation: "actually from Trust (Doug T.)" Douglas claims it was error for the trial court to ignore his testimony at the hearing, where he explained that when he attributed the deposit to "E.H. Tallman Farms," he was mistaken and corrected his error with this note. Mundhenke asserts that the trial court was in the best position to judge Douglas' credibility.

[¶ 12.] Ordinarily our analysis would end here, as the findings tend to support the judgment, except as noted *supra* at ¶ 10 concerning the amount of $700.96. *See Chilton, supra.* However, the Estate concedes that Douglas repaid the Estate the entire amount owed ($95,000.00), plus interest in the amount of $3,264.06. This judicial admission presents us with the same

> anomalous situation of an admission as to a controverted issue which is contrary to the express finding of the trial court. This admission is binding on [Defendant].

*Reichert v. Reichert,* 77 S.D. 258, 262, 90 N.W.2d 403, 405 (1958). In *Reichert,* a quiet title action, the issue before this court was whether one of the defendants took title to property without notice that the plaintiff had a proprietary interest in the land. The trial court found that the defendant "knew that plaintiff was in possession of the premises but believed ... the only interest of plaintiff was that of a tenant holding over after the expiration of his term[.]" However, in his brief, the defendant stated that he "recognized the fact that [plaintiff] owned or claimed some kind of an interest in the land, in addition to his rights as a tenant" and "[defendant] at the time of the meeting knew [plaintiff] had an interest[.]" Although this admission became binding, the trial court found for the defendant because plaintiff was estopped from asserting an ownership interest. *See also Tuttle v. Tuttle,* 399 N.W.2d 876, 878 n. 2 (S.D.1987):

> Although the trial court did not make a finding as to the last four debts, the husband in his brief admitted that these debts existed. Appellant's Brief at 4. This admission is binding on the husband.

(Citing *Reichert, supra* ).

[¶ 13.] A judicial admission is binding on the party who makes it. *Stemper v. Stemper,* 415 N.W.2d 159, 160 (S.D.1987) (*Stemper II* ), *modifying Stemper v. Stemper,* 403 N.W.2d 405 (S.D.1987). "Judicial admissions may occur at any point during the litigation process." *Kohne v. Yost,* 250 Mont. 109, 818 P.2d 360, 362 (1991) (citing *Lowe v. Kang,* 167 Ill.App.3d 772, 118 Ill.Dec. 552, 555, 521 N.E.2d 1245, 1248 (1988)). The focus is on the statement, not on a certain stage of the litigation. *Id.* This court has held that parties are bound by their judicial admissions made in appellate briefs on at least two prior occasions. *See Tuttle & Reichert, supra; see also Postscript Enters. v. City of Bridgeton,* 905 F.2d 223, 227–28 (8th Cir.1990) (judicial admission in defendant's appellate brief foreclosed necessity of considering certain arguments raised by plaintiff); *Royko v. Griffith Co.,* 147 Cal.App.2d 770, 306 P.2d 36, 40 (1957) ("[T]he express or implied admissions of the briefs may be recognized as properly filling a hiatus in the

transcript."); *Bannister v. State*, 202 Ga.App. 762, 415 S.E.2d 912, 916 (1992) ("It is well-established that a party ... may make admissions [in a] brief [which are] binding upon the party and estops the party from denying the admission[.]"); *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill.App.3d 505, 207 Ill. Dec. 690, 695, 648 N.E.2d 146, 151 (1995) (holding that a judicial admission made in a motion to dismiss and repeated in an appellate brief is "binding and incontrovertible").

[¶ 14.] In view of the Estate's admission that the check for $20,000.00 came from the Trust and that the notation crediting "E.H. Tallman Farms" was inadvertent error, Mundhenke's remedy, if any, is against the Estate. Mundhenke's remedy against the Estate is questionable because the Estate appears to be acting in good faith by conceding the money was repaid.[1] If we do not give effect to the Estate's admission that Douglas repaid the Estate in full, Douglas will pay a substantial amount of money to the Estate for a debt he does not owe. A judgment may be disturbed or modified if "refusal to take such action appears to the court inconsistent with substantial justice" because "substantial rights of the parties" will otherwise be jeopardized. *See* SDCL 15–6–61:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, *unless refusal to take such action appears to the court inconsistent with substantial justice.* The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

(Emphasis added). Under these circumstances, our failure to recognize Estate's judicial admission would cause prejudice to Douglas' substantial rights. *Id.* Accordingly, we reverse the portion of the judgment which relates to Issue 1.

[¶ 15.] **2. WHETHER THE FINDINGS OF FACT SUPPORT THE TRIAL COURT'S CONCLUSION THAT DOUGLAS WAS RESPONSIBLE FOR INTEREST ON LATE PAYMENT OF INHERITANCE TAX.**

[¶ 16.] Inheritance tax was due June 26, 1981 (one year from the date of death). Douglas paid the tax December 29, 1983, three years, six months, and three days from the date of death. Late payment resulted in a debt to the Estate for $6,889.83 as interest accrued to the State of South Dakota. Douglas argues there were insufficient funds to pay both the federal estate tax and the state inheritance tax. Therefore, he claims, he made the "appropriate decision" to pay the tax which would incur the most interest.

[¶ 17.] The federal estate tax ($50,147.95) was paid March 20, 1981. The amount owed by the Estate for state inheritance tax, before interest, was $32,957.15. The record belies Douglas' claim of insufficient funds prior to actual payment. Although there were not sufficient funds on June 26, 1981, it is clear he could have liquidated part of the Estate to pay the tax. Additionally, the ending balance on December 31, 1982—nearly a year before Douglas paid the tax—was $64,165.29, more than enough to pay the tax and interest accrued to that date. Douglas paid himself $5,000.00 in administrator's fees on January 4, 1982. Furthermore, he transferred $55,000.00 to his own Trust on February 11, 1983 and $40,000.00 on August 12, 1983. He could have easily paid the tax at a much earlier date, thereby avoiding such a substantial interest payment. Therefore, this portion of the judgment is affirmed.

[¶ 18] **3. WHETHER THE FINDINGS OF FACT SUPPORT THE TRIAL COURT'S CONCLUSION THAT DOUGLAS FORFEIT ADMINISTRATOR'S FEES.**

[¶ 19.] The trial court held that the matter of administrator's fees was within the

---

1. Mundhenke does not even attack the substantive nature of Douglas' claim, but argues only that it is too late on this appeal for him to offer this evidence. In reaching this conclusion, we do not foreclose her from contesting the Estate's admission upon the merits on remand in the event she has evidence to support her challenge.

court's discretion and ordered Douglas to repay the $5,000.00 fee which he paid to himself January 4, 1982. *See generally* Sheldon R. Shapiro, Annotation, *Resignation or Removal of Executor, Administrator, Guardian, or Trustee, Before Final Administration or Before Termination of Trust, As Affecting His Compensation,* 96 A.L.R.3d 1102 (1980).

[¶ 20.] The court found that Douglas failed to make an annual accounting, in violation of statute. He trafficked in, and profited from,[2] funds of the Estate. He accrued an unnecessary debt to the Estate by his untimely payment of the inheritance tax. He listed himself as a nephew of the decedent, which he is not. Such inclusion of himself as a nephew resulted in an additional exemption to which the Estate is not entitled, meaning that more inheritance tax and interest will be or is owed to the State of South Dakota. Douglas sold Estate stock without petition, notice, finding of need, order, or authority, to an entity in which he holds an interest. The court found Douglas to be negligent and in violation of his fiduciary duty to the Estate.

[¶ 21.] In the absence of an objection, and in light of the entire record, this decision is supported by the findings.

[¶ 22.] Douglas claims Mundhenke should pay his appellate attorney's fees because she "has been unwilling to settle differences," requiring him to bring this appeal. He brought a motion for appellate attorney's fees under SDCL 15–26A–87.3, which merely provides for the filing requirements of the motion; he cites no other authority. *See Eide v. Oldham–Ramona Sch. Dist. No. 39–5,* 516 N.W.2d 322, 326 (S.D.1994) ("[Appellant] sets forth no authorities by way of cases or statutes to support her request."). Therefore, his motion for appellate attorney's fees is denied.

[¶ 23.] We affirm the judgment as to issues 2 and 3 and reverse as to issue 1.

[¶ 24.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

2. Douglas has always maintained he did not abscond with any funds and that his purpose in transferring funds was to increase an investment interest rate by combining Estate funds with Trust funds. His contention that he remitted to the Estate its fair share of the interest rate apparently went unrefuted on the merits at the hearing.