1997 SD 62

**Mark TUNENDER, Plaintiff
and Appellee,**

v.

**Elizabeth MINNAERT, Defendant
and Appellant.**

**No. 19769.**

Supreme Court of South Dakota.

Argued Feb. 19, 1997.

Decided June 4, 1997.

Thomas M. Issenhuth and Chris S. Giles of Arneson, Issenhuth, Gienapp & Blair Madison, for plaintiff and appellee.

Richard Dale, Sioux Falls, for defendant and appellant.

[¶ 1.] **Justice Richard W. Sabers delivers the majority opinion of the Court on Issue 1, which holds that the trial court timely ruled on the motion for new trial.**

[¶ 2.] **Justice David Gilbertson delivers the majority opinion of the Court on Issue 2, which holds that the trial court abused its discretion in holding that defense counsel's statement in closing arguments constituted a judicial admission.**

[¶ 3.] SABERS, Justice, writing the majority on Issue 1, which holds that the trial court timely ruled on the motion for new trial.

[¶ 4.] Motion for new trial was granted to plaintiff in automobile accident case after jury awarded him nothing in damages. The jury returned this verdict even after hearing counsel for defendant driver state in closing arguments that plaintiff suffered a soft tissue injury in the accident and deserved $10,000. Defendant claims 1) the trial court lost jurisdiction to rule on the motion for new trial, on the basis that the hearing date was set outside the statutory time limit, and 2) that counsel's statement did not constitute an admission and the grant of a new trial was an abuse of discretion. Issue 1 is affirmed and Issue 2 reversed.

### FACTS

[¶ 5.] Plaintiff Mark Tunender (Tunender) was stopped in his automobile at an intersection when he was struck from behind by an automobile operated by Defendant Elizabeth Minnaert (Minnaert). Tunender sued, claiming the accident caused injuries requiring back surgery. He sought damages for medical expenses, pain and suffering, and loss of earning capacity. Minnaert admitted liability and the parties went to jury trial to determine damages.

[¶ 6.] There was conflicting expert testimony concerning whether Tunender's back condition, known as "spondylolisthesis,"[1] was aggravated by the accident to the extent that surgery was required. The experts also assigned different impairment ratings; however, the evidence showed that Tunender's in-

---

1. Tunender's spondylolisthesis developed during his childhood. He was 22 years old at the time of the accident.

come actually increased each year since the accident.[2]

[¶ 7.] During closing arguments to the jury, Minnaert's counsel stated, in part:

[Tunender] simply does not deserve a great deal of damages for a soft tissue injury.

I would submit to you he does, however deserve some compensation and that compensation would be in the amount of $10,000. It was a simple rear end fender bender, and that's all he deserves from this accident.

The jury returned a verdict for Minnaert, awarding no damages to Tunender.

[¶ 8.] Tunender timely filed a motion for new trial, which was granted. The trial court reasoned that the jury "did not follow the evidence" because the admissions of a soft tissue injury and entitlement to compensation "almost required the jury to return a verdict for some amount." Minnaert appeals.

## STANDARD OF REVIEW

 [¶ 9.] "[A] motion for a new trial is addressed to the sound discretion of the trial court; we will not overturn the court's ruling unless it appears affirmatively from the record there has been an abuse of discretion." *Robbins v. Buntrock,* 1996 SD 84, ¶ 16, 550 N.W.2d 422, 427 (citations omitted). Additionally, this court has consistently stated that more deference is given to the trial court's grant of a new trial than to its denial of one:

In conducting our review we must keep in mind that "orders granting new trials stand on firmer ground than orders denying them as they are not conclusive or decisive of any rights or issues. On the contrary they merely 'open the way for a reinvestigation of the ... case upon its facts and merits.'" *Jensen v. Miller,* 80 S.D. 384, 124 N.W.2d 394, 396 (1963) (quoting *Pengilly v. J.I. Case Threshing Mach. Co.,* 11 N.D. 249, 91 N.W. 63 (1902)). In

this connection, "this court views the evidence most favorable to the conclusions reached by the trial court rather than most favorable to the verdict when a new trial is denied." *Id.* (citations omitted).

*Bakker v. Irvine,* 519 N.W.2d 41, 45 (S.D. 1994) (alterations omitted); *see also Delzer v. Penn,* 534 N.W.2d 58, 60 (S.D.1995) ("[A] clearer showing of an abuse of discretion is required when a new trial has been granted than where a new trial has been denied."). "If the *trial court* finds that an injustice has been done by the jury's verdict, the remedy lies in granting a new trial." *Simmons v. City of Sioux Falls,* 374 N.W.2d 631, 632 (S.D.1985) (citing *Mueller v. Mueller,* 88 S.D. 446, 221 N.W.2d 39 (1974) (emphasis added)).

[¶ 10.] **1. WHETHER THE TRIAL COURT TIMELY RULED ON THE PLAINTIFF'S MOTION FOR NEW TRIAL**

[¶ 11.] A party seeking a new trial must bring a motion in accordance with SDCL 15–6–59(b), which provides:

The motion for a new trial stating the grounds thereof shall be served and filed not later than ten days after the notice of entry of the judgment.[3]

The court shall make and file the order granting or denying such new trial within twenty days after the service and filing of such motion, unless for good cause shown, the court files an order within said twenty days extending the time for entering such order. If a motion for new trial has not been determined by the court and no order has been entered by the court extending the time for such ruling within twenty days from the date of service and filing of such motion, it shall be deemed denied.

Minnaert argues the motion was "deemed denied" because the trial court neither ruled on the motion nor entered an order extending the time for such ruling within twenty days from the date of service and filing of such motion. Therefore, she argues, the trial

---

**2.** Tunender works for his father and was paid even when he was not working while recovering from surgery. His father testified that he was paid a minimum "draw" whether he earned it or not.

**3.** It is undisputed that Tunender timely filed his motion for new trial.

court was without jurisdiction to rule on the motion.

[¶ 12.] The relevant dates for this issue are as follows:

*June 4, 1996:* Notice of entry of judgment is filed.

*June 6, 1996:* Tunender serves the motion for new trial.

*June 7, 1996:* Tunender files the motion.

*June 11, 1996:* Tunender serves notice to Minnaert that the hearing on the motion will be held July 2, 1996.[4]

*June 12, 1996:* Minnaert's counsel contacts Tunender's counsel to request a postponement.

*June 13, 1996:* Tunender serves an amended notice of hearing with the new date of July 16, 1996. This notice is filed June 14, 1996.

*July 16, 1996:* Hearing on motion for new trial. Motion is granted.

*July 17, 1996:* Order granting new trial is filed.

The twenty-day requirement set out in SDCL 15–6–59(b) began to run on June 8, 1996, the first day after the motion was both served and filed.[5] Therefore, the final day by which the trial court could have ruled on the motion, in the absence of an order extending the time, was June 27, 1996. As noted, the court did not rule until July 16, 1996.

[¶ 13.] Minnaert argues that the fact she requested a postponement is of no consequence because even the July 2, 1996 hearing date would have been too late for the trial court to retain jurisdiction to determine the motion. We disagree.

[¶ 14.] Tunender promptly secured the first available hearing date and provided notice to opposing counsel. Within the 20 days, Minnaert requested a continuance of the hearing date but did not inform Tunender that she would raise the 20–day time

limitation defense. Tunender could reasonably assume that Minnaert was waiving or extending the time for hearing beyond the 20–day statutory period. Tunender did not proceed with a showing of "good cause" to obtain a continuance by the trial court. Under such circumstances, Minnaert should not be allowed to raise this issue when it was to accommodate her that Tunender agreed to the extension.

> A party to an action may not make a voluntary decision to proceed in a subsequent inconsistent manner when they find themselves in an undesirable position as a result of a legal posture. "Judicial estoppel bars such gamesmanship."

*Estes v. Millea,* 464 N.W.2d 616, 619 n 3 (SD 1990) (quoting *Gregory v. Solem,* 449 N.W.2d 827, 832 n 8 (SD 1989) (other citations omitted)). This view is in accordance with the dictates of SDCL 15–6–1, which states that SDCL chapter 15–6 "shall be construed to secure the just, speedy and inexpensive determination of every action."

[¶ 15.] Cases involving claims against the State and its political subdivisions are somewhat analogous. In reference to notice statutes, we have consistently held that defendants have no duty to call to a plaintiff's attention the fact that a time period is running which, if allowed to expire, may result in a nonsuit. However, where a defendant affirmatively creates an objectively reasonable impression in the plaintiff that the plaintiff has fully complied with the notice statute, it cannot later attempt to raise the notice statute as a defense. *See, e.g., Erickson v. County of Brookings,* 1996 SD 1, ¶ 16, 541 N.W.2d 734, 737; *Smith v. Neville,* 539 N.W.2d 679, 681–82 (S.D.1995).

[¶ 16.] We conclude, based upon these circumstances, that the circuit court's action upon Tunender's motion for new trial was timely. Tunender timely filed his motion for new trial. Both times that he scheduled a

---

4. This notice does not appear to have been filed with the clerk; however, Tunender's brief indicates the hearing date of July 2 was set by the trial court and was the first available date in that circuit, which Minnaert does not dispute.

5. SDCL 15–6–6(a) provides, in relevant part:

> In computing any period of time prescribed or allowed by this chapter, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

hearing date he acted within the statutory time period prescribed in SDCL 15-6-59(b), and the second time he acted at the request of Minnaert when he secured the later date. We hold that the trial court acted within its jurisdiction when it ruled on the motion on July 16, 1996.

[¶ 17.] MILLER, C.J., AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 18.] GILBERTSON, Justice, writing the majority opinion on Issue 2, which holds that the trial court abused its discretion in holding that defense counsel's statement in closing arguments constituted a judicial admission.

[¶ 19.] **2. WHETHER THE STATEMENTS MADE BY MINNAERT'S COUNSEL IN CLOSING ARGUMENT CONSTITUTED A BINDING ADMISSION AS TO WARRANT A NEW TRIAL**

■ [¶ 20.] We conclude that the trial court abused its discretion when it granted a new trial. The trial court cited as its sole basis for granting a new trial its view that a statement made by counsel for Minnaert, in closing argument, constituted an admission that Tunender was entitled to damages. The statement by counsel was:

> [Tunender] simply does not deserve a great deal of damages for a soft tissue injury.
>
> I would submit to you he does, however deserve some compensation and that compensation would be in the amount of $10,000. It was a simple rear end fender bender, and that's all he deserves from this accident.

The test used by this Court is whether we believe a judicial mind, "in view of the law" and the circumstances could have reasonably

reached that conclusion. *Rosen's, Inc. v. Juhnke*, 513 N.W.2d 575, 576 (S.D.1994). Had our holding in *Miller v. Hernandez*, 520 N.W.2d 266 (S.D.1994), been properly applied, such a conclusion as resulted here could not have been reached.

■ [¶ 21.] "A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of a fact claimed to be true, and is used as a substitute for legal evidence at the trial." *Harmon v. Christy Lumber, Inc.*, 402 N.W.2d 690, 692–93 (S.D. 1987). An admission "is limited to matters of fact which would otherwise require evidentiary proof," and cannot be based upon personal opinion or legal theory. *Baxter v. Gannaway*, 113 N.M. 45, 822 P.2d 1128, 1133 (1991).

[¶ 22.] In determining this statement to be a binding admission as to damages, the trial court failed to follow this Court's holding in *Miller*. Therein the same argument was advanced based on a similar statement by an attorney in closing argument.[6] We held that such a statement was not a binding admission and:

> If the jury's verdict can be explained with reference to the evidence, rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed. Viewing the evidence in a light most favorable to the verdict, we cannot say that the jury's award was a result of passion or prejudice or that the jury has palpably mistaken the rules of law by which damages in this case are to be measured.

*Miller*, 520 N.W.2d at 272.

■ [¶ 23.] The language of a party or the attorney should be construed in view of the purpose for which it is used and in connection with the surrounding circumstances and statements. *Harmon*, 402 N.W.2d at 693.[7] Here the statement was

---

6. I submit to you, ladies and gentlemen, if you will fairly take this to the jury room, you keep your own experiences, you discuss all of this, realizing that it's your business and how you do it is your business. But any award, ladies and gentlemen, in my opinion that would exceed $25,000 is not in any way, shape or form supported by any evidence upon which you have taken an oath as jurors to decide this case. *Miller*, 520 N.W.2d at 272.

7. Apply this well-reasoned rationale with the description by the dissenting opinion as to what unfolded in this trial:

> Throughout the trial, Minnaert attempted to show the jury that Tunender's post-accident behavior and self-reports to physicians demonstrated that he did not sustain any injury mandating compensation. Her counsel abandoned

made in closing argument.[8] The trial court had already instructed the jury that the final arguments "are not evidence." However, the jury was also informed "an admission of fact by an attorney for a party is binding on that party." Having been so instructed, the jury returned a verdict for the defendant, Minnaert, thus finding the statement not to be an admission.[9]

[¶ 24.] This conclusion that the attorney's language should be construed by its purpose is further supported by the common legal definition of a judicial admission. Black's Law Dictionary defines judicial admissions as those "made in court by a person's attorney *for the purpose of being used as a substitute* for the regular legal evidence of the facts at the trial." *Black's Law Dictionary* 48 (6th ed 1990) (emphasis added). A review of the entire record shows that Minnaert's actions throughout the trial are inconsistent with the view that her attorney's purpose in closing was to substitute and contradict the evidence Minnaert had already produced at trial. Clearly, the purpose was argument. The jury, which also sat through the trial, agreed.

[¶ 25.] As an alternate basis for a new trial, Tunender attempted to argue per SDCL 15–6–59(a)(5) that the jury's verdict was based on passion and prejudice in that it failed to follow the evidence and trial court's instructions. The trial court did not grant the motion for a new trial on this alternate basis, and thus we conclude that the jury followed the trial court's instructions, with the only matter left for dispute being the evidentiary effect of counsel's comments in closing argument.

[¶ 26.] Beyond the basic question, the dissent fails to adequately explain how a statement by counsel that the damages were no more $10,000 somehow gets Tunender an entire new trial. In closing argument, Tunender argued to the jury that he was entitled to $167,967, not $10,000. Why should Minnaert be required to run the gauntlet of an entire second trial and risk a verdict of $167,967, not $10,000?[10] There certainly was no statement of any sort that could be construed to be an admission to any amount above $10,000, let alone $167,967.[11] Even the

those claims in his closing argument (*infra,* ¶ 36, 15).

8. The dissent's undue reliance upon *Rosen's* is misplaced. There we stated that "an attorney can make an admission during opening statement that is binding upon his client and relieves the opposing party of the duty to present evidence on that issue." *Rosen's,* 513 N.W.2d at 577. In the case now before us, all the evidence was in at the time the statement in dispute was made in closing argument to the jury. There clearly is a distinction between an opening statement as to what the evidence will show and a closing statement as to what the evidence did show.

9. Other jurisdictions are in agreement. In *Bales v. Shelton,* 197 Ga.App. 522, 399 S.E.2d 78, 80 (1990) the court held that a suggestion of an amount of damages by counsel in closing arguments was not an admission of fact, but "merely counsel's opinion or conclusion in the nature of an assessment." In *Hayes v. Xerox Corp.,* 718 P.2d 929 (Alaska 1986), the plaintiff argued that counsel made a judicial admission during closing arguments concerning damages for medical expenses, loss of consortium, pain and suffering, and lost wages. Noting its decision was consistent with the majority of jurisdictions, the court held counsel's statements were not judicial admissions, as "closing arguments are matters of opinions." *Id.* at 932. *See also Baxter, supra.*

10. While granting a new trial on the "admission" issue, the trial court conceded that the jury had a factual basis to reject Tunender's claims and the court denied the same motion based on a claim of juror passion or prejudice and failure to follow the evidence:

The court will grant a new trial, but in doing so the court would flat out tell the Plaintiffs your request for damages was way high. A rational jury would not have been able to probably award the requests.
Mr. Tunender's testimony was not very credible, so we'll award a new trial and hope you get this thing settled for not very much and get it out of court, because it's a waste of time to go through another jury trial on this thing.

11. If one is going to seize on statements of counsel, Tunender's counsel at the motion for new trial, "admitted" his client was not entitled to $167,967 at a second trial. Counsel stated:

Had the jury followed the court's instructions, and considered counsel Dale's admission during closing argument, that damages would be in the amount of $10,000, we would have very little supported grounds for the argument today because the jury would have followed the law and awarded the damages that were admitted.

trial court conceded this, but nevertheless granted a new trial.

[¶ 27.] Here there was a substantial amount of evidence presented by Minnaert that the accident did not cause Tunender any compensable damages.[12] Per *Miller*, this is what is required to uphold a jury's verdict and to be the basis for a denial of a new trial. In failing to apply the rationale of *Miller*, the trial court abused its discretion in granting a new trial on the basis of the closing statement of counsel.

[¶ 28.] Trials are a search for the truth as determined by the jury based upon all the evidence. They should not turn on a single comment made by counsel in the heat of a closing argument. "A judicial admission is a formal act of a party or his attorney in court[.]" *Rosen's*, 513 N.W.2d at 577.[13] Such an important proceeding should not be relegated to a game of "gotcha." Admissions should be limited in accordance with our prior case law.

[¶ 29.] For the above reasons, we uphold the jury's verdict and reverse the trial court's granting of a new trial.

[¶ 30.] MILLER, C.J., and KONENKAMP, J., concur.

[¶ 31.] SABERS and AMUNDSON, JJ., dissent.

12. The medical procedure was surgery to correct spondylolisthesis, which, according to both Tunender's treating physician and a doctor retained by Minnaert, was not caused by the accident in question but rather occurred in early youth or the teenage years. As far as any claims that the accident aggravated this pre-existing condition, Minnaert was traveling at 12 miles an hour when her vehicle rear-ended Tunender's vehicle. Tunender got out of his vehicle with no difficulty, was able to walk around, and drove his car to a parking lot along with Minnaert, where they awaited the arrival of the police. After a 30-minute police investigation, Tunender was able to get back into his vehicle, which was still driveable, and go to a prearranged appointment he had to inspect the vacuum cleaner of a potential customer. He did not seek any medical attention until three days after the accident when he was examined by a chiropractor.

13. The dissent, for all of its authority, much of it from other jurisdictions, fails to address our previous holding in *Miller*. *Miller* is as close a case on the facts as can be found and is precedent of

[¶ 32.] SABERS, Justice, dissenting on Issue 2.

[¶ 33.] **2. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING A NEW TRIAL WHEN DEFENSE COUNSEL'S ADMISSIONS DURING CLOSING ARGUMENTS CONSTITUTED EVIDENCE CONTRARY TO THE VERDICT.**

[¶ 34.] Our review of a grant of a new trial is limited to the grounds specified by the trial court:

The trial court when granting a motion for new trial shall in its order specify each and every ground upon which it bases such order; all grounds urged upon such motion and not specified in the order shall be deemed to have been overruled by the trial court.

SDCL 15-6-59(g). As noted supra ¶ 9, we give greater deference when the motion for new trial is granted than when the motion is denied. In its order, the trial court stated that a new trial "shall be granted under SDCL 15-6-59(a)(6) in that the jury's verdict was not justified by the evidence presented herein and is against the law upon which the jury was instructed." In its oral order granting the motion, the trial court specifically pointed to the statements made by defense counsel in closing arguments as the evidence which suggested a different verdict.[14]

this Court. Our recent decision of *Estate of Tallman*, 1997 SD 49, 562 N.W.2d 893 makes an interesting comparison with that of *Miller*. In *Tallman* we found a formal admission made by an estate in its brief to this Court to be binding on that estate. No party to the appeal ever attempted to argue that it was not a binding admission and it clearly constituted "a formal act of a party or his attorney in court[.]" *Rosen's*, 513 N.W.2d at 577.

14. The trial court stated, in part:

At best, based on the testimony, or maybe at worst for [Minnaert], there was an admission that there was some soft tissue injury only.

The question then comes down to how do you value that, how do you put a value on that. Based on the admissions that were made and the court does believe there were admissions during closing arguments where counsel stated in part that he did receive an injury, it was a soft tissue injury and he is entitled to compensation, that the Defendant by that argument

Therefore, I only address counsel's statements to determine 1) whether they constituted a binding judicial admission of fact, and if so, 2) whether the take-nothing verdict was therefore unjustified by the evidence and against the law upon which the jury was instructed. *See* SDCL 15–6–59(a)(6) (providing that "insufficiency of the evidence to justify the verdict" or a verdict "that is against the law" are grounds for new trial).

[¶ 35.] A judicial admission is binding on the party who makes it and an admission of fact by an attorney is also binding on that party. *Stemper v. Stemper*, 415 N.W.2d 159, 160 (S.D.1987); *see also Kohne v. Yost*, 250 Mont. 109, 818 P.2d 360, 362 (1991) ("[Attorney's] sayings and doings in the presence of the court concerning the trial of the cause are the same as though said and done by the party himself.").

> A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of the fact claimed to be true, and is used as a substitute for legal evidence at the trial. An attorney can make an admission during opening statement that is binding upon his client and relieves the opposing party of the duty to present evidence on that issue.

*Rosen's Inc. v. Juhnke*, 513 N.W.2d 575, 577 (S.D.1994) (citations and internal quotations omitted). Although the discussion in *Rosen's* concerned judicial admissions in opening statements (simply because that is when the judicial admission in that case was made), the case should not be read to foreclose a judicial admission at any other stage of the litigation. This court has found that statements made in pleadings constituted judicial admissions. *See, e.g., Standard Cas. Co. v. Boyd*, 75 S.D. 617, 71 N.W.2d 450 (1955); *Goff v. Goff*, 72 S.D. 534, 37 N.W.2d 251 (1949); *Englund v. Berg*, 69 S.D. 211, 8 N.W.2d 861 (1943). "Judicial admissions may occur at any point during the litigation process. They may arise during discovery, pleadings, opening statements, direct and cross-examination, *as well as closing arguments.*" *Kohne*, 818 P.2d at 362 (citing *Lowe v. Kang*, 167 Ill.

App.3d 772, 118 Ill.Dec. 552, 555, 521 N.E.2d 1245, 1248 (1988) (emphasis added)). The focus is on the statement, not on a certain stage of the litigation. *In re Estate of Tallman*, 1997 SD 49, ¶ 13, 562 N.W.2d 893 (citing *Kohne, supra* ). In *Tallman*, this court unanimously held that admissions made in appellate briefs were binding. *Id.* at ¶¶ 12–13, 562 N.W.2d at 897; *accord Tuttle v. Tuttle*, 399 N.W.2d 876, 878 n 2 (SD 1987); *Reichert v. Reichert*, 77 S.D. 258, 262, 90 N.W.2d 403, 405 (1958). Obviously, *Rosen's* does not limit our inquiry to whether an admission was made during opening statements. *See also Larson v. A.T.S.I.*, 859 P.2d 273, 276 (Colo.Ct.App.1993) (collecting cases and noting that a judicial admission can be made in closing argument). A judicial admission is binding before both the trial and appellate courts. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir.1991); *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3rd Cir.1972); *Habecker v. Clark Equip. Co.*, 797 F.Supp. 381, 389 (M.D.Pa.1992).

[¶ 36.] Throughout the trial, Minnaert attempted to show the jury that Tunender's post-accident behavior and self-reports to physicians demonstrated that he did not sustain any injury mandating compensation. Her counsel abandoned those claims in his closing argument:

> [Tunender] simply does not deserve a great deal of damages for a soft tissue injury. I would submit to you *he does, however deserve some compensation and that compensation would be in the amount of $10,000. ...* (emphasis added).

By admitting there *was* an injury—an injury worth $10,000—Minnaert was thereafter barred from disputing it. She conceded liability prior to trial. Counsel's statement became the "substitute for legal evidence" on the previously disputed issues of proximate cause and the nature and extent of Tunender's injury. *Rosen's*, 513 N.W.2d at 577; *see also* 9 *Wigmore, Evidence* § 2588 (Chadbourn rev.1981):

> [A judicial admission] has the effect of a confessory pleading, in that the fact is

---

did leave the door open and almost required the jury to return a verdict for some amount. And when they returned the verdict for no

amount, they did not follow the evidence in this case. ... I guess I can't lay out my opinions much clearer than that.

thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it.... It is, in truth, a substitute for evidence, in that it does away with the need for evidence.

[¶ 37.] More significantly, the jury was barred from ignoring this evidence in reaching its verdict. The jury was instructed that closing arguments were not evidence. However, Instruction 15 went on to state that "[A]n admission of fact by an attorney for a party is binding on that party." Minnaert's counsel clearly made an admission by stating that Tunender was injured by Minnaert and therefore entitled to *some* compensation, and the jury obviously failed to consider this admission in its verdict. For a remarkably similar case, see *Childs v. Franco,* 563 F.Supp. 290 (E.D.Pa.1983), where the defendant admitted negligence in a rear-end collision and the only jury issue was the extent of injuries and damages. The plaintiff moved for a new trial when the jury returned a verdict for the defendant even though defense counsel, in closing argument, conceded the plaintiff suffered pain and injury as a result of the accident. The trial court granted the motion for new trial, stating:

> The alleged admission by defense counsel in this matter does relate to a question of fact—*e.g.,* was plaintiff injured as a result of the accident?
>
> . . . .
>
> Taken by itself and in context with other statements, the court finds that defense counsel's acknowledgment during closing argument of the existence of some pain from the accident, was an unequivocal admission binding upon his client.
>
> . . . .
>
> To the extent that defense counsel admitted that plaintiff did suffer some injury from the accident, even if nominal, the jury should simply have been directed to return a verdict in some dollar amount to compensate her for those injuries.

563 F.Supp. at 292, 293; *accord Larson,* 859 P.2d at 276 (reversing denial of new trial on identical facts and stating, "In light of defendants' admission of the existence of a physical injury, the jury's verdict for defendants cannot be supported by the evidence."); *see also Kohne,* 818 P.2d at 362–63 (remanding for new trial when jury found neither party negligent even though defense counsel admitted in closing argument that his client was negligent in shooting BB gun).

[¶ 38.] The Issue 2 majority mistakenly focuses on the defense counsel's statement that Tunender deserves $10,000.00 for his injury. The portion of the statement relating to $10.000.00 does not constitute the entire judicial admission, as the admission of a soft tissue injury is a binding statement of fact. *See Childs,* 563 F.Supp. at 292 ("[T]he scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof."). We consistently review factual determinations under the clearly erroneous standard. *See, e.g., Geraets v. Geraets,* 1996 SD 119, ¶ 7, 554 N.W.2d 198, 200 (Miller, C.J.); *Kent v. Lyon,* 1996 SD 131, ¶ 15, 555 N.W.2d 106, 110 (Sabers, J.); *Vanderwerff Implement, Inc. v. McCance,* 1997 SD 32, ¶ 9, 561 N.W.2d 24, 25 (Amundson, J.); *SB Partnership v. Gogue,* 1997 SD 41, ¶ 8, 562 N.W.2d 754 (Konenkamp, J.); *Lykken v. Class,* 1997 SD 29, ¶ 5, 561 N.W.2d 302, 304 (Gilbertson, J.). Likewise, we are required to view the evidence most favorable to the conclusions reached by the trial court on the grant of a motion for new trial. *Bakker,* 519 N.W.2d at 45.

[¶ 39.] If this were a case where the jury simply awarded a lesser amount of damages than the plaintiff sought, I might reach a different conclusion. *See, e.g., Itzen v. Wilsey,* 440 N.W.2d 312, 313 (S.D.1989) ("A new trial is not to be granted due to inadequacy of damages merely because a court believes a verdict is smaller than it should be."). However, we are faced with an "extreme case where ... the jury has palpably mistaken the rules of law by which damages in a particular case are to be measured." *Id.* at 314. In *Tallman,* we unanimously stated that "[O]ur failure to recognize Estate's judicial admission would cause prejudice to Douglas' substantial rights." 1997 SD 49 at ¶ 14, 562 N.W.2d at 897 (citation omitted). Similarly, our failure to acknowledge Minnaert's judicial admission will cause prejudice to Tunender's substantial rights. In light of

all of the above, the trial court did not abuse its discretion in granting a new trial. *See World Mart, Inc. v. Ditsch,* 855 P.2d 1228, 1237 (Wyo.1993) ("[A] trial judge acts within the ambit of discretion in relying upon the evidentiary value of such admissions [in closing argument]."). Therefore, it is the Issue 2 majority which is abusing the abuse of discretion rule, not the trial court. We should affirm.

[¶ 40.] AMUNDSON, J., joins this dissent.

