Joseph HARMON & Edith
Harmon, Plaintiffs,

v.

CHRISTY LUMBER, INC., a South
Dakota Corporation, Defendant
and Appellant.

and

Dave WARREN, d/b/a Warren Design
Group; and Mark Zarecky, d/b/a
Midwest Construction, Defendants,

v.

EAGLE 2000 ENGINEERING &
DESIGN, INC., Third Party
Defendant and Appellee,

and

Masonite Corporation, a Foreign
Corporation, Third Party
Defendant.

No. 15275.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1986.

Opinion Filed March 11, 1987.

Gustav K. Johnson of Tidball & Johnson, Pierre, for defendant and appellant.

Eugene D. Mayer of Riter, Mayer, Hofer & Riter, Pierre, for third party defendant and appellee.

WUEST, Chief Justice.

This is an appeal from the trial court's grant of summary judgment in favor of a third-party defendant and against the third-party plaintiff. We affirm.

In July of 1983 the plaintiffs, Joseph and Edith Harmon (Harmons), decided to begin construction of a new home in Pierre, South Dakota. The Harmons were anxious to begin construction as soon as possible so the house would be ready before winter. The Harmons met with representatives of Christy Lumber, Inc. (Christy) to select a floor plan and obtain a bid from Christy on materials. The Harmons selected a floor plan and Christy ordered the necessary blueprints only to learn that the designing company had ceased doing business. Loren Shantz (Shantz), a Christy employee, then telephoned Lyle LaFramboise (LaFramboise), president and general owner of Eagle 2000 (Eagle), a local architectural and engineering firm, to see if Eagle could draw blue prints for the Harmons' floor plan. In his affidavit in support of summary judgment, LaFramboise stated:

[Y]our affiant received a telephone call from Loren Shantz of Christy Lumber who advised your affiant that Christy Lumber had a customer who needed some plans drawn for a house he was building in Pierre; your affiant advised Shantz that his firm, Eagle 2000 did not do small jobs such as that type of work, but that it had a person working for it, namely, Dave Warren, who could do the job on his own time as Warren Design Group and that your affiant would advise Warren of the request and that Warren would in turn get in contact with Shantz; your affiant did then tell Dave Warren, who was employed by Eagle 2000 as an architect, of the request of Mr. Shantz and further your affiant told Warren that Eagle 2000 would not do this type of work but that he, Warren, could contact Shantz and do it on his own for himself and on his own time.

This affidavit was never disputed, although Shantz testified in a deposition:

Q Okay. When you got to Eagle 2000 what was said between yourself and Lyle?

A He told me that at that time he was in the middle of one of these Indian projects and that he wouldn't—you know, he couldn't just drop everything and do this even though we were in a hurry for it. But he said he had one of the guys working for him who done this in his spare time or when he was caught up with a project he was working on and that he would do it.

Q Okay. Did he indicate at that point who that was?

A Dave Warren.

Q Okay.

Q And so at that point were you relying on Lyle's advise?

A Yes.

Q That Warren could and would do the job?

A Yes.

Q   And, so, what took place next?   Did you give Lyle the house plans, or what?

A   I give him the rough sketch.

Q   Okay.   From Design Products?

A   Right.

Q   And he indicated that Warren would get back to you, or what was the agreement?

A   Yes.

Q   Okay.   Was there an indication how long that would take?

A   Not right at the present time.

Q   Did you get back to Joe, then, to let him know that they were working on it?

A   No. Joe called me.

A   Yes.

Q   And what did you tell him?

A   I informed him that they were working on it.

Q   Okay.   Did you tell him that it was Eagle 2000, or Dave Warren, or who did you tell him was doing it?

A   Eagle 2000.

Q   At that point was it your understanding that Warren was doing it as a separate and distinct enterprise, or moonlight job on his own, or that he was doing it on behalf of Eagle 2000?

MR. MAYER: Just a moment.   That's objected to as calling for a conclusion and opinion of the witness, and not sufficient foundation.

MR. BARNETT: You can go ahead and answer.

A   I was under the impression that it was Eagle 2000.

Shantz delivered the floor plans to Warren at Eagle's offices sometime before the 23rd of August.   After Warren had finished the blueprints Shantz picked them up and delivered them to the Harmons.   Warren gave Christy a bill for his work which was eventually paid to Warren Design Group.   While this all occurred sometime between August 23 and 24 the record does not show whether the blueprints were delivered to the Harmons either before or after Warren had presented his bill to Christy Lumber.   Shantz claims, however, he did not receive notice from Warren that the work would not be done under the auspices of Eagle, nor did he receive the bill indicating the work had been done by Warren Design Group until after he had already given the plans to the Harmons.

The house was constructed in the fall, and a number of flaws developed both during and after construction.   The Harmons sued Warren and Christy seeking damages for negligence and breach of contract in the preparation and procurement of the blueprints.   Warren cross-claimed against Eagle claiming that he had done the project as an employee acting within the scope of his employment.   Christy cross-claimed against Warren for indemnity and filed a third party complaint against Eagle.

Christy's third party complaint alleged they had justifiably believed that Warren was preparing the plans as an employee of Eagle.   Therefore, it was argued, Eagle should be estopped from asserting Warren was not an employee of Eagle acting within the scope of his employment when he prepared the plans.

Eagle moved and was granted summary judgment on Warren's cross-claim and Christy's third party claim.   Only Christy appeals.   The trial court cited Christy's brief in opposition to summary judgment as evidence of a judicial admission that Warren was not an employee of Eagle in preparing the plans.   Christy argues while there was no agency relationship between Eagle and Warren for the preparation of the blueprints, Eagle is estopped from asserting those facts because Eagle led Christy to believe Warren was an employee of Eagle.   On appeal Christy claims the trial court misconstrued its admission.   We agree.

An admission is a voluntary acknowledgment made by a party of the existence or truth of certain facts which are inconsistent with his claim in an action and amounts therefore to proof against him.   29 Am.Jur.2d Evidence § 597.   A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of

a fact claimed to be true, and is used as a substitute for legal evidence at the trial. *Hofer v. Bituminous Casualty Corporation,* 260 Iowa 81, 148 N.W.2d 485 (1967); *Johns v. Carr,* 167 Neb. 545, 93 N.W.2d 831 (1958); *Kuhlmann v. Platte Valley Irrigation District,* 166 Neb. 493, 89 N.W.2d 768 (1958); 29 Am.Jur.2d., Evidence § 615 (1967).

█ Ordinarily the whole of an admission is to be taken and construed together. The language of a party should be construed in view of the purpose for which it is used, and in connection with the surrounding circumstances and statements. The statement will not be subjected to a strained construction in order to deduce therefrom an admission, nor will it be so construed as to include admissions of fact not reasonably inferable therefrom, it being only where it is reasonably susceptible of a construction involving an admission as to the matter in question. 31A C.J.S. Evidence § 377 (1964).

█ Christy did admit there was no agency relationship; but, claimed Eagle was estopped from denying it, as Eagle had mislead Christy. The trial court's decision held the judicial admission removed both the respondeat superior and estoppel issues. However, the attorney for Christy qualified his admission and we recognize that qualification and the circumstances surrounding the entire statement. We hold the estoppel issue was not a part of the judicial admission. Nor, do we believe it was lost on the basis of the pleadings in the third party complaint as further suggested in the trial court's decision.

As is clear in paragraph VIII of the third party complaint, there is no mention of the word "estoppel":

That at all time relevant hereto Christy Lumber, Inc. justifiably believed that the plans it received on behalf of Joseph and Edith Harmon were drafted under the auspices of Eagle 2000 ...

Equitable estoppel, as an element of a cause of action, is not, as a rule, available, unless specifically pleaded. The exceptions to the rule are found in cases where the facts relied upon are set out in the petition, or when the plaintiff has had no opportunity to offer the plea. *Bundick v. Dennison,* 480 So.2d 458 (La.App.1985); *Beane v. City of Sturgeon Bay,* 112 Wis.2d 609, 334 N.W.2d 235 (1983); 28 Am.Jur.2d Estoppel and Waiver § 141 (1966); 120 A.L.R. 9, 76, 110 (1939).

█ The question arises whether sufficient facts were pleaded which establish equitable estoppel. A complaint which adequately informs defendant of the facts on which plaintiff intends to rely and contains the essential elements of an estoppel is sufficient. Mere informality in the pleading will not deprive the pleader of the benefit of the estoppel as long as the facts are sufficiently pleaded. 31 C.J.S. Estoppel § 156(1) (1966). Although meagerly plead, we hold sufficient facts were alleged in the third party complaint to establish equitable estoppel.

█ However, summary judgment is proper if there exists any basis which would support the trial courts' ruling. SDCL 15–6–56(c); *Barger For Wares v. Cox,* 372 N.W.2d 161 (S.D.1985). In South Dakota, one line of cases requires that there must be false representations or concealment of material facts to establish equitable estoppel. Another line of cases merely requires that the party to be estopped must have in some manner misled the party raising the estoppel to his detriment. *Sander v. Wright,* 394 N.W.2d 896 (S.D.1986). There are no facts in the record here that indicate a false representation or concealment of material facts. Under the second standard, we are unable to say there was a fact issue whereby LaFramboise mislead Shantz to Christy's detriment. The record (LaFramboise's affidavit) is undisputed that LaFramboise did not mislead Shantz. True, Shantz said in his deposition he was under the impression Eagle 2000 would do the job, but his impression is a conclusion which is not admissible. Otherwise, there is nothing in the record contradicting the LaFramboise affidavit and therefore, we affirm.

MORGAN, J., and FOSHEIM, Retired J., concur.

HENDERSON and SABERS, JJ., dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (dissenting).

Cases involving a state of mind and equitable actions are usually not suited for summary disposition. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 22 (1968). A seminal, and perhaps central, issue in this litigation between Christy Lumber, Inc., and Eagle 2000 is: What was Loren Shantz' state of mind or impression when he delivered the floor plan to Dave Warren at the business premise of Eagle 2000?

As a state of mind question exists, and as an equitable action was pleaded, and because the deposition (sworn testimony) is subjugated in quality of proof beneath an affidavit (witness the majority opinion), by virtue of the above rationale and authority, I respectfully dissent.

Earnestly, I call to the attention of the Bar and Bench that Summary Judgment is a severe and extreme remedy. Truly, I fear its employment beyond the scope, language, and intent of our holding in *Wilson*. Most recently, I reaffirmed this language:

> Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue should be resolved against the movant. *American Indian Agricultural Credit v. Fort Pierre Livestock, Inc.*, 379 N.W.2d 318 (S.D.1985).

*Aase v. State*, 400 N.W.2d 269, 274 (S.D. 1987) (Henderson, J., dissenting).

SABERS, Justice (dissenting).

I dissent.

At least three fatal defects exist in granting summary judgment in this case:

(1) A genuine material issue of fact exists as to whether Warren was drawing the blueprints as an employee of Eagle 2000 or on his own. Even appellee's counsel admits: "Although there is some slight difference of opinion concerning this conversation ...[,]." In my view, there is a substantial difference of opinion and testimony concerning this matter. Summary judgment is improper even if the differences were only slight, and not substantial, as we have here. Even slight differences in the testimony are to be resolved by the jury, as the fact finder, after evidence.

(2) Warren's deposition testimony is highly suspect in claiming at one point that he did this on his own. His testimony is self-serving for himself and his employer Eagle 2000. If his testimony was true, why did he retreat from it later in his deposition? In addition, if that testimony was true, why did Warren cross-claim against Eagle 2000 claiming that he had done the project as an employee acting within the scope of his employment? It is obvious that neither Warren nor his counsel believed his later self-serving inconsistent testimony. ·Either way it is for the jury to determine.

(3) The evidence was not taken in the light most favorable to the nonmoving party. As stated in *Trapp v. Madera*, 390 N.W.2d 558 (S.D.1986), in summary judgment, the pleadings, affidavits, depositions and every reasonable inference arising therefrom must be viewed most favorable toward the nonmoving party. *Id.* at 562. Moreover, the appellate court is not bound by the factual findings of the trial court. Instead, it must conduct an independent review of the record. *Hurney v. Locke*, 308 N.W.2d 764, 767 (S.D.1981); *Trapp, supra.*

Summary judgment is not a substitute for trial when the claims asserted are not a sham or frivolous. To surmise that a party will not prevail at trial is not a sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous, or so unsubstantial that it is obvious that it would be futile to try them. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968); *Trapp*, 390 N.W.2d at 564. The remedy is authorized only when the movant is entitled to judgment as a matter of law

because there are no issues of material fact. *Trapp, supra; Nemec v. Deering,* 350 N.W.2d 53, 55 (S.D.1984); *Caneva v. Miners and Merchants Bank,* 335 N.W.2d 339, 341 (S.D.1983).

The majority opinion offsets defendant's inadmissible self-serving affidavit against conflicting but admissible deposition testimony. Then it assumes the role of fact finder and furthers the error committed by the trial court. Since a trial court is a fact finder after court trials, its error is understandable. Since the Supreme Court is never a fact finder, its error is not. *Wilson, supra.*

In South Dakota we are supposed to have trial by jury, not by defendant's affidavit.[1] Therefore, neither the trial court nor the Supreme Court should even get to the questions concerning claimed attorney admissions, estoppel or admissibility of impressions. We should reverse and remand to the trial court for a jury trial.

1. As stated in my recent dissent in *Aase v. State,* 400 N.W.2d 269, 274 (1987), "It is interesting to note that according to the *Benchmark,* (1985), the annual report of the South Dakota Unified Judicial System, a mere 95 civil jury trials were reported in 1985. This amounts to 2.7 per circuit court judge per year; 1.4 per county per year; and 1.8 per week in the State of South Dakota. *Id.* at 38–39, Tables 13 and 14. I

respectfully submit that summary judgment has improperly replaced civil jury trials in this state despite the mandate of Art. VI., § 6, of the South Dakota Constitution[.]"

The recently published 1986 *Benchmark* shows an increase of 23 civil jury trials making a total of 118 for 1986. I submit my premise still stands.