1999 SD 94

**The UNITED STATES of America, Plaintiff,**

**and**

**Hartzell Propeller, Inc., an Ohio Corporation, Plaintiff and Appellant,**

**v.**

**The STATE of South Dakota, Defendant and Appellee.**

**Nos. 20659, 20690.**

Supreme Court of South Dakota.

Argued April 27, 1999.

Decided July 21, 1999.

Joseph M. Butler and Daniel Duffy of Bangs, McCullen, Butler, Foye and Simmons, L.L.P. Rapid City, for plaintiff and appellant.

Terence R. Quinn and Robert L. Morris of Quinn, Day & Barker, Belle Fourche, South Dakota and David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Hartzell Propeller (Hartzell) and United States (U.S.) sought contribution from the State for settlements made after the State's airplane crashed on April 19, 1993. State counterclaimed against Hartzell for the loss of its airplane. Following a jury trial resulting in a zero verdict on all claims, the trial court granted judgment not withstanding the verdict in favor of State on its counterclaim. Hartzell appeals. We reverse and remand.

## FACTS

[¶ 2.] On April 19, 1993, State's Mitsubishi model MU–2B–36A airplane was en route from Cincinnati, Ohio to Sioux Falls, South Dakota. On board were two State pilots and six other South Dakotans, including Governor George Mickelson. The airplane reported that it was experiencing depressurization of the cabin and difficul-

ties maintaining altitude. At approximately 3:53 p.m., the airplane crashed near Zwingle, Iowa. The pilots and all six passengers were killed. The crash destroyed the State's airplane and also caused substantial damage to a farm, including destruction of a silo, killing of farm animals, and damage to other outbuildings.

[¶ 3.] The Federal Aviation Administration (FAA), National Transportation Safety Board (NTSB), and Hartzell investigated and found that one hub arm separated on the left-hand propeller, resulting in a complete separation of the blade and clamp assembly.[1] Hartzell manufactured the propeller assembly on the airplane. It was placed on the airplane in 1979 when the aircraft was new. The State purchased the airplane used in 1983. Following the crash, allegations were asserted that Hartzell's propeller hub was defective and unreasonably dangerous. Allegations were also made that the FAA, through its air traffic controllers, gave the pilots erroneous information, after the hub failure, regarding the location of the nearest airport and the distance and direction of the Dubuque airport.[2] Hartzell and U.S. used joint tortfeasor releases to reach a settlement of all claims arising out of the airplane crash, except for the damage to the airplane. They then initiated an action for contribution against the State, claiming that the State's pilots negligently operated the airplane after the propeller hub failed.

[¶ 4.] State filed a counterclaim for the loss of the airplane based on: 1) implied warranty; 2) strict liability; and 3) negligence. The trial court dismissed the State's implied warranty claim because it was time barred by South Dakota's version of the Uniform Commercial Code (UCC).

---

1. A similar failure of a Hartzell propeller hub occurred on September 27, 1991 near Utica, New York (Utica incident). A propeller blade on a Mitsubishi MU–2B–60 separated while in flight. However, the pilot was able to successfully land the plane at the Utica airport with no injuries suffered.

2. When the State plane began experiencing problems, the pilots were in communication

with air traffic controllers and were told that the nearest airport was 25 miles away in Dubuque, Iowa. However, the Dubuque airport was actually approximately 35 miles away. Apparently, the closest airport was in Clinton, Iowa, approximately ten miles away. Expert testimony was offered at trial that the pilots might have safely landed in Clinton if they were provided accurate information.

A jury trial was held in January 1998 and the jury returned a verdict against the claim for contribution by the U.S. and Hartzell. However, it also returned a verdict against the State's counterclaim for the loss of the airplane. State made a motion for judgment not withstanding the verdict (JNOV) on its counterclaim. The trial court found that Hartzell made judicial admissions of liability during pre-trial conferences and the trial. Therefore, it granted State's motion for JNOV.

[¶ 5.] Hartzell appeals the following issues:

1) Whether the economic loss rule bars recovery by the State for damage to the airplane;

2) In the alternative, if the State is allowed to recover under tort theories, does SDCL 15–2–12.2 apply or, at a minimum, limit the State's right to recoupment only; and

3) Did Hartzell make admissions which admitted liability and proximate cause on the State's counterclaim.

[¶ 6.] By notice of review, State raises the following issue:

Whether statements made by Hartzell's counsel in closing arguments are judicial admissions.

## STANDARD OF REVIEW

[¶ 7.] Our standard of review on motions for directed verdict and JNOV is well settled:

A motion for a directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor.

If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse. A motion for judgment [notwithstanding the verdict] is based on and relates back to a directed verdict motion made at the close of all the evidence. [SDCL 15–6–50(b).] Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, then without weighing the evidence we must decide if there is evidence which would have supported or did support a verdict.

*Border States Paving, Inc. v. State,* 1998 SD 21, ¶ 10, 574 N.W.2d 898, 901 (alterations in original) (quoting *Schuldies v. Millar,* 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (citations omitted)).

[¶ 8.] Questions of law are reviewed de novo. *Alverson v. Northwestern Nat'l Cas. Co.,* 1997 SD 9, ¶ 5, 559 N.W.2d 234, 235 (citations omitted). Mixed questions of law and fact are fully reviewable. *In re Loomis,* 1998 SD 113, ¶ 7, 587 N.W.2d 427, 429 (citing *Crouse v. Crouse,* 1996 SD 95, ¶ 14, 552 N.W.2d 413, 417); *see also Lake Preston Housing v. S.D. Dept. of Labor,* 1999 SD 5, ¶ 7, 587 N.W.2d 736, 738; *Erdahl v. Groff,* 1998 SD 28, ¶ 15, 576 N.W.2d 15, 18; *In re Estate of Washburn,* 1998 SD 11, ¶ 8, 575 N.W.2d 245, 247.

[¶ 9.] **WHETHER THE TRIAL COURT ERRED IN GRANTING STATE'S MOTION FOR JNOV.**

[¶ 10.] Hartzell was required to show common liability with State for the crash in order to recover on its claim for contribution. *See* SDCL 15–8–11 [3] and

---

**3.** SDCL 15–8–11 provides:

For the purposes of §§ 15–8–12 to 15–8–22, inclusive, the term "joint tort-feasors"

SDCL 15–8–12.[4] However, when State counterclaimed for the economic loss of its airplane, Hartzell had to defend against the products liability claim. The jury returned a verdict in favor of State on Hartzell's claim for contribution and a verdict in favor of Hartzell on State's counterclaim for the loss of the plane. The trial court granted State's motion for JNOV, finding that statements made by counsel during opening statements and by Hartzell's president during Hartzell's case-in-chief were judicial admissions of liability and proximate cause. We disagree.

[¶ 11.] SDCL 15–6–8(e)(2) provides:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses.... *A party may also state as many separate claims or defenses as he has regardless of consistency* and whether based on legal or on equitable grounds or on both.

(Emphasis added). Therefore, Hartzell was allowed to maintain inconsistent claims and defenses and have them submitted to the jury.

[¶ 12.] At a motion hearing held April 23, 1997, the trial court denied State's motion for summary judgment on Hartzell's liability. The trial court stated:

> [I]t's the Court's ruling that by filing an action for contribution under the Contribution Among Joint Tortfeasors Act that the Plaintiff is not necessarily ... admitting liability as a matter of law for all of the underlying claims including for purposes of a Counterclaim, which the Defendant may assert. And as a consequence, it appears to the Court that *the jury must determine the degrees of negligence, if any.*

(Emphasis added). During a pretrial conference, counsel for Hartzell told the court that he intended to tell the jury that Hartzell admitted "some responsibility" for the crash. The trial court noted that: "Mr. Butler [counsel for Hartzell] said they will admit some responsibility, you're [State] talking about proximately negligent. *There's a big difference.*" (Emphasis added).

[¶ 13.] During opening arguments and its case-in-chief, Hartzell accepted "moral" responsibility for the crash by admitting the failure of its hub initiated the sequence of events leading to the crash. However, Hartzell denied it was legally responsible or that the failure of the hub was the sole proximate cause of the crash. Hartzell denied State's claim that it was negligent or strictly liable. It maintained that the U.S., through its air traffic controllers, and the State, through the actions of the State pilots, were partially responsible.

[¶ 14.] "A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of a fact claimed to be true, and is used as a substitute for legal evidence at the trial." *Harmon v. Christy Lumber, Inc.*, 402 N.W.2d 690, 692–93 (S.D.1987) (citations omitted). "An admission 'is limited to matters of fact which would otherwise require evidentiary proof,' and cannot be based upon personal opinion or legal theory." *Tunender v. Minnaert*, 1997 SD 62, ¶ 21, 563 N.W.2d 849, 853 (quoting *Baxter v. Gannaway*, 113 N.M. 45, 822 P.2d 1128, 1133 (N.M.App. 1991)).

[¶ 15.] The whole of an admission should be taken and construed together. *Harmon*, 402 N.W.2d at 693. "The language of a party or the attorney should be construed in view of the purpose for which it is used and in connection with the surrounding circumstances and state-

---

means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgement has been recovered against all or some of them.

4. SDCL 15–8–12 provides:

> The right of contribution exists among joint tort-feasors.

ments." *Tunender*, 1997 SD 62 at ¶ 23, 563 N.W.2d at 853 (citing *Harmon*, 402 N.W.2d at 693). When viewed in their proper context, the statements made by Hartzell were not admissions of legal liability or proximate cause. As the trial court noted prior to trial, admitting "some responsibility" is different from a judicial admission of negligence and proximate cause.

[¶ 16.] We have said:

Trials are a search for the truth as determined by the jury based upon all the evidence. They should not turn on a single comment made by counsel in the heat of a closing argument. "A judicial admission is a formal act of a party or his attorney in court[.]" *Rosen's Inc. v. Juhnke*, 513 N.W.2d 575, 577 (S.D.1994). Such an important proceeding should not be relegated to a game of "gotcha." Admissions should be limited in accordance with prior case law.

*Tunender*, 1997 SD 62 at ¶ 28, 563 N.W.2d at 855. The jury heard all the evidence, presumably on proper instructions which are not challenged, and returned a zero verdict. There is sufficient evidence in the record to support the verdict reached by the jury. The trial court erred in granting JNOV because Hartzell did not make judicial admissions. In view of the above analysis and our determination of this issue, we do not address Hartzell's other issues. Further, we find State's notice of review without merit.

[¶ 17.] Therefore, we reverse and remand for reinstatement of the jury verdict of zero.

[¶ 18.] MILLER, Chief Justice, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.