#30593-a-SPM
**2025 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BREYANNA GEERDES,                          Plaintiff and Appellant,

   v.

DENISE LIKNESS,                            Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CARMEN MEANS
Judge

* * * *

DILLON P. MARTINEZ
LIAM M. CULHANE of
Turbak Law Office, P.C.
Watertown, South Dakota                    Attorneys for plaintiff and
                                           appellant.


TYLER W. HAIGH
TYLER A. BRADLEY of
Evans, Haigh & Arndt, LLP
Sioux Falls, South Dakota                  Attorneys for defendant and
                                           appellee.

* * * *

                                           CONSIDERED ON BRIEFS
                                           AUGUST 27, 2024
                                           OPINION FILED **02/12/25**

MYREN, Justice

[¶1.] In this personal injury proceeding, Breyanna Geerdes appeals the circuit court's denial of her motion for a new trial. We affirm.

**Factual and Procedural Background**

[¶2.] On January 13, 2020, Denise Likness was driving eastbound on US Highway 212, approaching a controlled intersection with US Highway 81 in Watertown, South Dakota. Although her light was red, Likness did not slow or stop before entering the intersection and colliding with Geerdes' car. Likness has consistently admitted fault for causing the accident.

[¶3.] Geerdes alleges the accident caused physical injuries (including neck pain, headaches, mid- to low-back pain), anxiety, and anger outbursts. Following the accident, Geerdes received treatment from Dr. Bryan Dingsor at Watertown Chiropractic for neck pain and headaches. Dr. Dingsor treated her four times within three weeks of the accident. At her last visit on January 29, 2020, Geerdes stated her neck pain was much better, her low-back pain was not noticeable, and the pain on her right side was due to working as a cosmetologist.

[¶4.] Geerdes was also treated for neck pain and headaches at Sanford Clinic Watertown starting three weeks after the accident. Geerdes was prescribed steroids and muscle relaxers and was told to begin physical therapy. Geerdes' last visit within proximity to the crash came on April 2, 2020, when she stated the headaches were gone and she had gotten better.

[¶5.] Geerdes went to three physical therapy appointments and missed one appointment. She also canceled her final appointment because she stated she was

doing much better and would self-manage. After the accident, Geerdes continued working as a cosmetologist and going to the gym to lift weights and engage in "high-intensity interval training workouts." Altogether, Geerdes obtained post-accident treatment for approximately two and a half months.

[¶6.]     Sixteen months after the accident, Geerdes again began complaining of pain. Dr. Evan Katz performed a digital motion x-ray on her and found she had upper cervical instability and neck curvature. He opined that these problems led to spinal pain, headaches, dizziness, and neck pain that impacted her everyday life.

[¶7.]     Evidence presented at the jury trial showed that Geerdes was treated for similar symptoms in the past. Starting in June 2018 and lasting until October 2, 2019, Geerdes visited Dr. Dingsor at Watertown Chiropractic numerous times with complaints of right shoulder and arm pain and tingling in her fingers. Dr. Dingsor measured Geerdes' cervical spine and found Geerdes had pain on flexion, moderate pain on extension, and some decreased motion and mild to moderate pain when rotating left and right. Dr. Dingsor diagnosed her with moderate hypertonicity and found scar tissue around the base of the skull at the back of her neck. In October 2019, Geerdes stated her neck was better since the last treatment, but there was still shooting pain in her upper arm and right shoulder.

[¶8.]     In October 2022, Geerdes filed suit against Likness, alleging negligence which caused her injuries. Likness admitted negligence but denied the accident caused Geerdes' injuries and pain. During voir dire, Likness' counsel stated:

> In this case you'll learn that Miss Likness admits fault for
> causing the accident, there's not going to be an issue of who was

more at fault in causing the accident, Miss Likness has come here today and she'll admit she's liable for causing the accident, what we do have a dispute about is what are the right monetary damages to award[.]

[¶9.] During his opening statement, Likness' counsel announced his defense theory:

One of the things that you'll see in this case is that even before the accident the plaintiff was treating with a chiropractor here in Watertown, during this trial we'll show you those pre-accident medical records that indicate that the plaintiff suffered from a history of neck and shoulder problems which she contributed [sic] to her work as a cosmetologist and that was a job that she continued working even after this accident.

[¶10.] Likness' counsel concluded his opening statement with:

At the end of this case I believe you'll see that Denise Likness did not cause any of the injuries, the long lasting injuries to Miss Geerdes, none of the ongoing complaints nearly 4 years since this accident appear to be related and accordingly after you've heard all the evidence and the testimony and when this case is submitted to you, we will ask that you find that the plaintiff has only proven limited damages based upon the moderate amount of medical treatment that she received after the accident.

[¶11.] Following the close of evidence, while addressing Likness' motion for judgment as a matter of law, Geerdes argued Likness had judicially admitted causing her injuries. During the settling of instructions, Geerdes again raised the issue and asked the circuit court to remove the causation question from the special verdict form, leaving the jury to determine only the amount of damages to award. The circuit court responded, "[a]ll right, your record is made with regard to that."

[¶12.] During his closing argument, Likness' counsel stated:

So again the summary, two months before the accident she's complaining of neck pain from her work as a cosmetologist that goes into her shoulder, after the accident she's got 3 chiropractic

-3-

visits, she's got an appointment with Dr. Fligge where Dr. Fligge refers her to physical therapy, she only attended 3 physical therapy sessions and then less than 3 months after the accident she's discharged from physical therapy telling both her physical therapist and her primary care physician that she's gotten better, she doesn't feel like she needs anymore treatment and her headaches are gone. And then there's no other treatment with Dr. Fligge, with Dr. Dingsor, with the physical therapist ever again for anything related to this accident. And that I believe is the care that's related to this accident and *I think reasonably you can conclude that if the plaintiff did have injuries from the accident then it would be limited to this period of time,* these first couple of months where she was getting treatment and she got better and she discontinued her care. Anything after this two months when she started treating a year later, that cannot be reasonably considered to be related to this accident. . . . Treatment starting nearly a year and a half after the accident was not legally caused by the accident. And any treatment or injuries that Miss Geerdes complains of today was not caused by the accident. I'm not up here telling that Miss Geerdes is lying or doesn't feel pain in her neck right now, but there's no way that we can reasonably say that that was related to this motor vehicle accident. (Emphasis added.)

[¶13.]     Later, in closing argument, Likness' counsel explained:

Again, Miss Likness admits that she caused this accident. She caused the accident. *She doesn't necessarily admit that she caused the injuries, but to the extent that you do think that there are injuries in this case, I have a duty to talk about all of the elements in this case and one of those elements is damages.* How do we measure damages in a case like this? And one thing I want to mention is there's not property damage or anything like that, this is all related to the injury she's claiming in this accident. As you saw I introduced medical bills into evidence. I introduced the medical bills into evidence. You saw that yesterday. I was the one that put those in, not the plaintiff's counsel. I wanted you to see what was – what I believe is the best evidence of what her treatment was after the accident.

 . . .

And the total bills for the first two and a half months were $1806. That's the treatment that is related to this accident. When we think about what's the reasonable treatment, *again I think it is reasonable if you're going to find that you think*

-4-

*damages were caused by the accident, I think it's reasonable to conclude that the first couple months is related.* The early chiropractic visits and the physical therapy that was recommended by her doctor. After that the next treatment begins in April of 2021. That was 16 months after the accident. It's not reasonable to conclude that that's related to this accident.

. . .

*I would suggest that you consider her post accident medical bills again, if you think that those were related those are a little less than $2,000, and then for general damages, that's for you to determine. My suggestion, I think $5,000, $10,000 may be reasonable.* (Emphasis added.)

[¶14.] During her rebuttal closing argument, Geerdes again raised the admission issue, specifically related to the statements in the closing argument. The circuit court indicated it would consider Geerdes' argument during jury deliberations. Closing arguments were completed, and the case was submitted to the jury for deliberation. After the jury left the courtroom, the circuit court stated:

Mr. Martinez, you made a motion with regard to an admission that was made during closing argument. I am mindful of that admission. I am not going to change the instructions nor the jury form that I'm giving to the jury. From my point of view it is much like a criminal case where if the defense attorney says we don't dispute that this incident happened on July 30, 2022, we don't take that element out of the offense. I think that you will certainly have won your case in that regard, obviously if the jury comes back and says no to the first question on the special verdict form then you've probably preserved your issue and a new trial would most likely be considered by the Court but I'm not going to amend the jury instructions nor the special verdict form based on the motion you've made.

[¶15.] The jury found Likness' negligence was not the legal cause of Geerdes' injuries. After dismissing the jury, the circuit court stated:

All right. So I think it's fair to say I made a mistake in leaving the question of the legal cause of Breyanna Geerdes' injuries

> still open to the jury based upon the way that the evidence came
> into – or the evidence and arguments were presented to them
> and so Mr. Martinez, I'm going to leave it up to you as to how
> you want to proceed legally, what motions you want to make to
> the Court and so I'll leave that to you.

[¶16.] Geerdes filed a motion for a new trial, claiming the issue of causation was improperly given to the jury. The circuit court never ruled on that motion. Consequently, the motion was denied pursuant to SDCL 15-6-59(b). Geerdes appeals, alleging the circuit court abused its discretion in failing to grant a new trial because the circuit court erroneously submitted the causation question to the jury.

## Standard of Review

[¶17.] "We review specific grants or denials of a motion for a new trial under the abuse of discretion standard." *Bridgewater Quality Meats, LLC, v. Heim*, 2007 S.D. 23, ¶ 10, 729 N.W.2d 387, 392 (citing *Schmidt v. Royer*, 1998 S.D. 5, ¶ 9, 574 N.W.2d 618, 621). When a motion for a new trial is automatically denied pursuant to SDCL 15-6-59(b), the abuse of discretion standard is applied because the plain meaning of the rule presumes the trial court "to have exercised its discretion by letting the time-lapse serve as a denial of the motion just as if the trial court had affirmatively granted the motion." *Bridgewater*, 2007 S.D. 23, ¶ 10, 729 N.W.2d at 392 (citation omitted).

## Decision

***Whether the circuit court abused its discretion by failing to grant the motion for a new trial.***

[¶18.] "A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of a fact claimed to be true, and is used as a substitute for

legal evidence at the trial." *Harmon v. Christy Lumber, Inc.*, 402 N.W.2d 690, 692–93 (S.D. 1987). "Ordinarily the whole of an admission is to be taken and construed together. The language of a party should be construed in view of the purpose for which it is used, and in connection with the surrounding circumstances and statements." *Id.* at 693. Additionally, a statement will not be constrained to extrapolate an admission or construed to include unreasonable inferences. *Id.* "An admission 'is limited to matters of fact which would otherwise require evidentiary proof,' and cannot be based upon personal opinion or legal theory." *Tunender v. Minnaert*, 1997 S.D. 62, ¶ 21, 563 N.W.2d 849, 853 (citation omitted). "Judicial admissions may occur at any point during the litigation process." *In re Estate of Tallman*, 1997 S.D. 49, ¶ 13, 562 N.W.2d 893, 896. The focus is not on the stage of litigation but on the statement itself. *Id.*

[¶19.]     In *Tunender*, the plaintiff sued for injuries sustained in a car accident. 1997 S.D. 62, ¶ 5, 563 N.W.2d at 850. During closing arguments, defense counsel stated:

> [Tunender] simply does not deserve a great deal of damages for a soft tissue injury. I would submit to you he does, however deserve some compensation and that compensation would be in the amount of $10,000. It was a simple rear end fender bender, and that's all he deserves from this accident.

*Id.* ¶ 7, 563 N.W.2d at 851 (alteration in original). The jury awarded no damages. *Id.* The *Tunender* Court explained that: "[t]he language of a party or the attorney should be construed in view of the purpose for which it is used and in connection with the surrounding circumstances and statements." *Id.* ¶ 23, 563 N.W.2d at 853. This Court concluded that counsel's closing arguments were not admissions: "[a]

review of the entire record shows that Minnaert's actions throughout the trial are inconsistent with the view that her attorney's purpose in closing was to substitute and contradict the evidence Minnaert had already produced at trial. Clearly the purpose was argument." *Id.* ¶ 24, 563 N.W.2d at 854.

[¶20.] *In re Estate of Tank* involved a challenge to a will offered for probate. 2023 S.D. 59, ¶ 18, 998 N.W.2d 109, 117. The party offering the will moved for judgment as a matter of law and stated:

> I think there is sufficient evidence to take the case to the jury with regard to *the first three elements of the undue influence* test. However, that's *not the case for the fourth element* . . . . Based on the evidence presented, there's no way a reasonable jury could conclude that the 2012 will . . . clearly shows the effects of undue influence.

*Id.* ¶ 24, 998 N.W.2d at 119 (alterations and emphasis in original). This Court noted these arguments were made outside the presence of the jury and did not constitute admissions because they "did not function to relieve [the opposing party of the] burden to present evidence regarding the first three elements of undue influence." *Id.* ¶ 34, 998 N.W.2d at 121.

[¶21.] In *Harmon*, the defendant admitted there was no agency relationship but claimed the architecture firm was estopped from denying an agency relationship. 402 N.W.2d at 693. The *Harmon* Court examined the context of the admission and considered the language of qualification used in the admission. Ultimately, the Court concluded there was an admission, but "the estoppel issue was not part of the judicial admission." *Id.*

[¶22.] In *United States v. State*, a propeller assembly manufacturer acknowledged moral responsibility for an airplane crash due to the hub failure.

1999 S.D. 94, ¶¶ 2, 13, 598 N.W.2d 208, 210, 212. Nevertheless, the manufacturer maintained the hub was not the sole proximate cause of the crash. *Id.* ¶ 13, 598 N.W.2d at 212. This Court examined the statements in their "proper context," including "the purpose for which [they were] used and in connection with the surrounding circumstances and statements[,]" and concluded that acknowledgment of moral responsibility was not an admission of negligence and proximate cause. *Id.* ¶ 15, 598 N.W.2d at 212−13.

[¶23.]     *Zahn v. Musick* presented this Court with a factual and procedural history like the present case. 2000 S.D. 26, ¶¶ 2–4, 605 N.W.2d 823, 825−26. In his amended answer, Musick stated: "Defendant, for purposes of this litigation only, admits legal liability for any injuries which Plaintiffs may have suffered, proximately resulting from the accident which is the subject of this litigation." *Id.* ¶ 24, 605 N.W.2d at 828. During voir dire, Musick's counsel stated:

> The issue as far as Mr. Musick is concerned is Mr. Musick's position is he accepts responsibility for the accident, but he takes issue with the extent of damages that are being claimed and injuries that are being claimed by Ms. Zahn.

*Id.* In his opening statement, Musick's counsel said:

> We're going to be asking you to return verdicts that are totally inconsistent with the claims that are being made in this case, but which shall be consistent with the evidence that shall be put before you. We will be asking you to return a verdict that is consistent with the cuts that didn't require stitching, and the glass that went under the skin that came out.

*Id.* Finally, during closing argument, Musick's counsel argued:

> Ms. Zahn was in this accident. She had some cuts. She was examined. She had the cuts cleaned up. She didn't have stitches. There would be some medical expense associated with that. And I believe that if you look at the exhibit they

> introduced, they said that was $233 including a subsequent appointment with Dr. Bartholomew. That was right after the accident. It was $233 . . . . So I'm going to suggest to you, Ladies and Gentlemen, that you return a verdict for Wendy Zahn in the amount of her expenses for Dr. Bartholomew, $233.25; Dr. Abraham in the amount of $262; Dr. Stout in the amount of $167; Dr. Payne, $892; MRI and x-rays for $1,386. Fair to check all that out. If my addition is correct, that's $2,977.25.

*Id.* ¶ 25, 605 N.W.2d at 829. Musick also proposed jury instructions that accepted responsibility for the accident but disputed that the accident was the proximate cause of all the injuries and damages Zahn claimed. *Id.* ¶ 24, 605 N.W.2d at 828–29.

[¶24.] This Court recognized that Musick had admitted fault in causing the accident "but denied that all of the injuries complained of by Zahn were a proximate result of the accident." *Id.* ¶ 28, 605 N.W.2d at 829. After reviewing the precise statements made by Musick's counsel, this Court concluded that Musick admitted responsibility for $2,977.25 of medical expenses immediately following the accident. Although Musick admitted those precise medical expenses, the Court concluded that Musick had never conceded that Zahn suffered any pain and suffering. *Id.* ¶ 33, 605 N.W.2d at 830.

[¶25.] Geerdes did not seek the costs of her medical expenses. As her counsel explained in closing argument: "We're not asking you for the medical expenses and the treatment. We're not asking you for the medical expenses. Those are economic damages. We're asking [for] the non-economic damages, the pain, suffering, loss of enjoyment of life, aggravation of pre-existing conditions. That's what we're asking for."

[¶26.] Likness' defense theory was equally clear. She presented evidence to convince the jury that Geerdes had similar pain and symptoms prior to the accident, received treatment for a short time following the accident, and experienced no long-term pain or symptoms. Likness' counsel's alleged admissions were made in the context of that defense theory. Likness' counsel recognized that a jury could find Geerdes suffered pain and suffering because of the accident. He admitted records of her medical expenses to place context on the nature and extent of her injuries. His purpose in discussing the amount of those medical expenses was not to relieve Geerdes of her responsibility to prove her medical expenses because she was not requesting medical expenses. Likness' counsel discussed those medical expenses to provide the jury with a frame of reference should it determine Geerdes was entitled to some monetary award for pain and suffering related to the limited time she received treatment immediately following the accident. Further, counsel's remarks about the medical expenses began with prefatory statements using qualified terms such as, "*if* the plaintiff did have injuries from the accident . . ." and "*to the extent* that you do think there are injuries in this case . . . ."

[¶27.] Having reviewed the entire record and analyzed each statement in the proper context, we conclude none constituted an admission. The circuit court did not abuse its discretion in denying the motion for a new trial. We affirm.

[¶28.] JENSEN, Chief Justice, and SALTER and DEVANEY, Justices, concur.

[¶29.] KERN, Justice, dissents.

#30593

KERN, Justice (dissenting).

[¶30.]    I respectfully dissent from the majority's conclusion that defense counsel's statements during trial did not amount to a judicial admission. In my view, defense counsel admitted causation and the circuit court erred in submitting the causation question to the jury and abused its discretion in denying Geerdes' motion for a new trial.

[¶31.]    During trial, defense counsel made varying statements admitting negligence, fault, and/or liability, which when considered together, amount to a judicial admission regarding causation. In addition to the statements noted by the majority, counsel stated in voir dire: "In this case you'll learn that Miss Likness *admits fault* for causing this accident. Likness has come here today and *she'll admit she's liable* for causing the accident, what we do have a dispute about is what are the right monetary damages . . . and she asks you to award a lesser amount than what's going to be asked for." Then, during opening statement counsel stated: "Miss Likness will *admit that she's fully responsible* for causing the accident and she's come here to court and she does not deny that. What we do deny however is the extent of the damages being claimed in that case." He also stated in support of his argument for judgment as a matter of law: "Although Miss Likness *admitted fault* for causing the accident plaintiff is still required to show that the accident legally caused her damages and they failed to present adequate expert testimony regarding causation."

-12-

#30593

[¶32.] More specifically, counsel made statements during opening argument admitting causation for Geerdes' injuries that presented immediately after the accident. Counsel stated:

> We won't deny that she did go in and get treatment after the accident, but the long lasting treatment does not appear reasonably related from the evidence you will see in this trial. At the end of this case I believe you'll see that Denise Likness did not cause any of the injuries, the long lasting injuries to Miss Geerdes, none of the ongoing complaints nearly 4 years since this accident appear to be related and accordingly after you've heard all the evidence and the testimony and when this case is submitted to you, we will ask that you find that the plaintiff has only proven limited damages based upon the moderate amount of medical treatment that she received after the accident.

Likness then admitted Geerdes' medical records detailing the treatment she received in the ten weeks following the accident and the associated medical bills.

[¶33.] Based on defense counsel's statements, counsel for Geerdes requested that the causation element be removed from the special verdict form. The circuit court denied the request, analogizing the situation to a criminal case where a jury may acquit on any ground, even elements the defendant concedes. The circuit court also stated it was "mindful of [Likness'] admission," and that Geerdes "will have certainly won [her] case in that regard" and stated, "obviously if the jury comes back and says no to the first question on the special verdict form then you've probably preserved your issue and a new trial would most likely be considered by the Court."

[¶34.] Following receipt of the jury's verdict, the circuit court noted it was "fair to say I made a mistake in leaving the question of the legal cause of Breyanna Geerdes' injuries still open to the jury based upon the way that the evidence . . . and arguments were presented to them and so Mr. Martinez, I'm going to leave it up to

-13-

you as to how you want to proceed legally, what motions you want to make to the [c]ourt." Counsel for Geerdes timely moved for a new trial. The circuit court neglected to rule on the motion, effectively denying the motion pursuant to SDCL 15-6-59(b).

[¶35.] A motion for a new trial "is addressed to the sound discretion of the trial court and a denial of the motion will not be reversed absent an abuse of that discretion." *Berry v. Risdall*, 1998 S.D. 18, ¶ 9, 576 N.W.2d 1, 4. Here, the circuit court concluded that causation was established through counsel's statements, the court stated it "made a mistake" by including causation on the verdict form, and it then indicated it would entertain a motion for new trial. Without explanation, the circuit court then denied the motion by inaction. Under these circumstances, where counsel's statements amounted to a judicial admission, not just of negligence or fault, but of causation and liability, the denial of a new trial was an abuse of discretion.*

---

\* The consequences of admitting *liability* differ from admitting one is simply at fault or negligent. *See Schwartz v. Brancheau*, 702 S.E.2d 737, 740 (Ga. Ct. App. 2010) (where the plaintiff argued the defendant "admitted *liability* for the automobile accident, not simply negligence," the court disagreed, stating, "[a]n admission of liability requires that the defendant concede that he was negligent and that his negligence was the proximate cause of the plaintiff's damages.") (emphasis in original); *Hurt v. Chavis*, 739 A.2d 924, 928–30 (Md. Ct. Spec. App. 1999) ("Clearly, liability requires more than a finding (or admission) that the defendant was negligent. . . . '[l]iability is an obligation to pay, and arises only when all essential elements of an action are established. . . . Direction of a verdict that liability exists is improper unless all elements, including damages, are so convincingly shown that rational minds could not differ as to their existence.'") (internal and other citation omitted). *See also Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 526 (S.D. 1995) (Moses, J. dissenting) ("The question before us is whether the document entitled 'Admission of Legal Liability' is an admission of liability, in which case the only issue for

(continued . . .)

[¶36.] "A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of a fact claimed to be true, and is used as a substitute for legal evidence at the trial." *Harmon v. Christy Lumber, Inc.*, 402 N.W.2d 690, 692–93 (S.D. 1987). "Ordinarily the whole of an admission is to be taken and construed together. The language of a party should be construed in view of the purpose for which it is used, and in connection with the surrounding circumstances and statements. The statement will not be subjected to a strained construction in order to deduce therefrom an admission, nor will it be so construed as to include admissions of fact not reasonably inferable therefrom, it being only where it is reasonably susceptible of a construction involving an admission as to the matter in question." *Id.* (citing 31A C.J.S. *Evidence* § 377 (1964)). "An admission of fact by an attorney is binding on that party." *Stemper v. Stemper*, 415 N.W.2d 159, 160 (S.D. 1987).

[¶37.] While it is a close call due to the imprecise nature of counsel's statements, in my view, when considered together, the statements amount to a judicial admission regarding liability for at least the first ten weeks of Geerdes' treatment. Defense counsel made varying remarks that Likness admitted she was negligent, admitted she was at fault, and admitted she was liable. While the majority concludes counsel's statements were qualified by prefatory words like "if" and "to the extent," only the statements made during closing argument were so

_____

(. . . continued)
   the jury to resolve is the question of damages, or whether is it an admission of negligence, leaving the issue of proximate cause and the question of damages for the jury.").

qualified. During voir dire and opening argument, defense counsel consistently and unqualifiedly stated that the only issue for the jury was the appropriate measure of damages, distinguishing the damages resulting from Geerdes' treatment immediately following the accident from the future damages for ongoing pain in her chest, back, and shoulder.

[¶38.] Unlike in *Zahn v. Musick*, where we determined counsel's statements were judicial admissions as to causation only, counsel here did little to clarify that causation was still an issue for the jury to decide. 2000 S.D. 26, ¶ 24, 28, 605 N.W.2d 823, 828–29. In *Zahn* although defense counsel "consistently made judicial admissions that he caused the accident," counsel "denied that all of the injuries complained of by [plaintiff] were a proximate result of the accident." *Id.* Further, counsel made clear that the defendant "takes issue with the extent of damages that are being claimed and injuries that are being claimed." Counsel did not "concede that Zahn was entitled to damages above the amount of $2977.25. Any damage award above $2977.25 remained disputed." *Id.* *Compare In re Estate of Tank*, 2023 S.D. 59, ¶ 34, 998 N.W.2d 109, 121 ("Counsel's comments were made outside the presence of the jury and did not function to relieve [plaintiff's] burden to present evidence regarding the first three elements of undue influence.").

[¶39.] The circuit court concluded both that Geerdes had proven her case with regard to causation and that defense counsel admitted causation with respect to the injuries and treatments obtained in the first few months after the accident. The circuit court, which was better situated to evaluate credibility, testimony, and the manner of presentation of the evidence, found these facts and communicated

them to the parties. As a reviewing court, we recognize the circuit court's advantage in determining the effect of statements made during trial. *See, e.g.*, *State v. Rose*, 2024 S.D. 56, ¶ 38, 12 N.W.3d 127, 138 (recognizing the trial judge was in the best position to assess the potential impact on the jury); *State v. Dillon*, 2010 S.D. 72, ¶ 50, 788 N.W.2d 360, 373 ("We review the matter while recognizing that the trial court had the advantage of being present during the trial and was in the best position to determine whether extrinsic material prejudiced the jury.").

[¶40.] The circuit court initially concluded that defense counsel admitted causation and it admitted its mistake in submitting causation to the jury. As a result, the circuit court so much as suggested that Geerdes move for a new trial. The evidence supports the circuit court's initial conclusions about causation and accordingly, the circuit court erred in submitting causation to the jury and it abused its discretion in later denying the motion for a new trial. I would, therefore, reverse the circuit court's rulings and remand for a new trial.